**Benjamin Lee MURRAY, Appellant,**

v.

**Diane Lynn MURRAY, Appellee.**

**No. S-4779.**

Supreme Court of Alaska.

July 23, 1993.

Kenneth P. Jacobus, Anchorage, for appellant.

Terry C. Aglietti, Anchorage, for appellee.

Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS, and COMPTON, JJ.

## OPINION

MOORE, Chief Justice.

This is the second time Ben and Diane Murray's marital property dispute has come before this court. *See Murray v. Murray,* 788 P.2d 41 (Alaska 1990) (*Murray I*). In this appeal, Ben argues that the superior court erred in entering its findings of fact on remand without holding an adversary hearing or receiving new evidence. Ben also challenges the court's refusal to take into account his post-trial injuries when it reconsidered the equitable division of the parties' marital estate.

I. Facts and Proceedings

Ben and Diane Murray were married in 1983 after living together for five years. They permanently separated in 1987. In the initial divorce proceedings, the parties disputed the extent to which they were functioning as an economic unit while they lived together. They also disputed wheth-er Diane's pecuniary and nonpecuniary contributions to certain properties in Homer, acquired in Ben's name prior to the marriage, evidenced the parties' intent to hold the property jointly.

At the close of the trial, superior court Judge Victor D. Carlson concluded that Ben and Diane had "commingled their financial affairs to such an extent [after they moved in together] that the court is unable to find that [Ben] maintained separate financial arrangements." Judge Carlson awarded Diane three parcels of land in Homer, the house that sat on one of those lots, her nonvested Teamsters pension, and other personal property. He awarded Ben the remaining Homer parcel, his vested Teamsters pension, a charterboat, a tractor, and other personal property. Judge Carlson stayed the award pending Ben's appeal, but required Ben, who was living in the Homer residence, to both pay rent to Diane and make payments on the land.

In *Murray I,* we reversed Judge Carlson's property division, holding that he had erred in concluding that "commingling alone established the parties' intent to hold property jointly." 788 P.2d at 42. We directed the trial court "to distinguish separate from marital assets; to assess whether the equities required invasion of separate assets under AS 25.24.160(a)(4); and if so, to enter explicit findings to that effect." *Id.*

On remand Judge Carlson granted Ben's motion to reopen discovery in June 1990. A month later Diane submitted a supplemental finding of fact, which identified Ben's separate property as a $10,000 down payment on the Homer property, the tractor, proceeds from the sale of Ben's trailer, and any pension benefits Ben had accrued prior to the marriage. Invasion of Ben's separate property was justified on the grounds that Diane (1) had made substantial nonpecuniary contributions to Ben's separate property; (2) had contributed approximately $50,000 to the improvement of the Homer residence; and (3) had forgone valuable career opportunities at Ben's request. The proposed finding also awarded

Diane judgment for the cost of any repairs necessary on the residence because of lack of maintenance or waste during Ben's post-trial occupancy.

Almost a year later, Judge Karl Johnstone, who took over the case from Judge Carlson, adopted Diane's recommended findings without comment. Ben moved for reconsideration and a new hearing, offering considerable documentation in support of his claim that Diane put no more than $10,000 of her own money into the Homer property. Ben also argued that in equitably dividing the marital estate, the court should take into account two severe injuries that he suffered after the initial trial. Judge Johnstone denied this motion without hearing any additional evidence. This appeal followed.

## II.  Discussion

### A.  *Amended Findings on Remand*

■ We normally remand a case for more specific findings when the trial court's findings are not detailed or explicit enough to permit meaningful review. *Sloan v. Jefferson*, 758 P.2d 81, 86 (Alaska 1988). In *Murray I* we directed the trial court to distinguish between marital and separate property and to determine whether invasion of the parties' separate property was necessary to balance the equities. 788 P.2d at 42. After reviewing the amended findings adopted by Judge Johnstone, we conclude that the court failed to meaningfully comply with our instructions.

■ We have consistently held that trial courts must follow a three-step process in equitably dividing marital property. First, the court determines what property is available for distribution. Second, the court values the property. Third, the court equitably divides the property. *See Wanberg v. Wanberg*, 664 P.2d 568, 570 (Alaska 1983); *see also Chotiner v. Chotiner*, 829 P.2d 829, 831 (Alaska 1992). If at the third step the court finds that an equitable divi-

sion is not possible using the marital property alone, then the court must determine whether invasion of separate property is necessary to balance the equities. AS 25.-24.160(a)(4). If invasion is necessary, then the court must determine what separate property the parties own, value it, and adjust the initial division as needed. *Chotiner*, 829 P.2d at 831.

■ Instead of setting out the analysis called for in *Wanberg* and *Chotiner*, Judge Johnstone's amended findings of fact simply name certain assets as separate property and deem them invaded. Without a determination of the value of the marital estate, it is impossible for us to determine to what extent invasion of Ben's separate property was required, if at all. Furthermore, since the court did not assign a value to the nonmarital portion of Ben's Teamsters pension, we cannot determine whether invasion of his separate share was either just or necessary. Thus we must remand this case a second time for findings sufficiently detailed and explicit to give us a clear understanding of the trial court's decision. *See Chotiner*, 829 P.2d at 833.

### B.  *Necessity for New Evidence on Remand*

■ Ordinarily, a remand for additional findings does not obligate the trial court to hear new evidence.[1] We will reverse a trial court's refusal to receive new evidence on remand only when the refusal constitutes an abuse of discretion, unless we have expressly called for a new trial or evidentiary hearing. *Chugach Elec. Ass'n v. Northern Corp.*, 562 P.2d 1053, 1062 (Alaska 1977).

■ In this case, Ben seeks to introduce documentary evidence of his claim that Diane contributed no more than $10,000 to the Homer property improvements. At trial, the parties disputed the amount of Diane's contributions, but offered little documentary evidence to support their figures.

---

**1.** Ben argues that Judge Johnstone's refusal to hear new evidence denied him due process. However, Ben had his opportunity to present evidence at the original trial, and he does not argue that the court prevented him from doing so at that time. Therefore, Judge Johnstone's refusal to consider Ben's new evidence does not alone amount to a denial of due process.

Judge Carlson made no findings on this issue in his original decision.

Because the evidence presented to Judge Carlson on this point was both sparse and conflicting, we conclude that Judge Johnstone abused his discretion in adopting Diane's finding that she had contributed approximately $50,000 to the Homer property without conducting an evidentiary hearing. Judge Johnstone did not preside at the earlier trial and had no opportunity to weigh the credibility of the parties on this issue. *See, e.g., Adrian v. Adrian,* 838 P.2d 808, 812 (Alaska 1992) (reversing a child support order entered by a judge who had not presided over the initial divorce proceedings because the record he relied on did not provide support for his decision).

### C. *Valuation of Diane's Teamster Pension*

■ In his original decision, Judge Carlson found that Diane's nonvested pension was worth approximately $22,000 and that Ben's vested pension was worth approximately $62,000. Ben argues that Judge Johnstone erred in failing to revalue Diane's Teamster pension on remand because Diane's pension had then vested and had substantially increased in value.

We have previously held that if the value of disputed property has changed between the date of an original divorce trial and the date of a new trial on remand, the court should value the property as of the date of the new trial unless specific circumstances would make such revaluation unjust. *Moffitt v. Moffitt,* 813 P.2d 674, 678 (Alaska 1991). In this case revaluation clearly "advances interests of accuracy and fairness," *Ogard v. Ogard,* 808 P.2d 815, 819 (Alaska

1991), *quoted in Moffitt,* 813 P.2d at 678, because under our case law, nonvested pensions should not be valued and distributed until the time of vesting. *See Laing v. Laing,* 741 P.2d 649, 655–58 (Alaska 1987) (holding that although nonvested pensions are marital property subject to equitable division, the court should not divide them at the time of divorce, but instead should reserve jurisdiction over them until the time when they vest). Accordingly, the trial court should have revalued Diane's pension to reflect the pension's full vested value.

### D. *Ben's Post-trial Injuries*

■ Ben argues that his post-trial injuries represent a change in circumstances that Judge Johnstone was obligated to consider on remand. Relying on *Moffitt,* 813 P.2d at 678, he argues that because his disability arose before the entire property division became final, the trial court must therefore take his injuries into account when equitably dividing the property.

■ We agree. The reversal of a judgment means that the judgment is vacated, "and the case is put in the same posture in which it was before the judgment was entered." *Shilts v. Young,* 643 P.2d 686, 688 (Alaska 1981). Because we again reverse and remand this case, the trial court should consider Ben's current needs and circumstances when reconsidering the property division.[2]

However, we emphasize that Ben's current physical condition is just one of many factors that enter into a determination of an equitable property division. *See Merrill v. Merrill,* 368 P.2d 546, 547 n. 4 (Alaska 1962). The trial court should also take into

---

**2.** Our holding here does not change the general rule that a property division constitutes a final judgment, subject to modification only under the provisions of Alaska Civil Rule 60(b). *Clauson v. Clauson,* 831 P.2d 1257, 1259 n. 3 (Alaska 1992); *see also Allen v. Allen,* 645 P.2d 774, 776 (Alaska 1982). We have modified property divisions upon a showing of extraordinary circumstances justifying relief from judgment under Civil Rule 60(b)(6). *Clauson,* 831 P.2d at 1260–61; *Foster v. Foster,* 684 P.2d 869, 871–72 (Alaska 1984). However, if the property division in this case were final, then Ben's post-trial injuries would be simply an unrelated change in personal circumstances, and would not constitute extraordinary circumstances sufficient to justify modification. *See, e.g., Schwartzman v. Schwartzman,* 248 N.J.Super. 73, 590 A.2d 246, 248 (App.1991) (declining to modify property division to account for failure of spouse's business), *certification denied,* 126 N.J. 341, 598 A.2d 897 (1991); *In re Marriage of Moak,* 64 Or.App. 487, 668 P.2d 1249, 1251 (1983) (same). *See generally* Lawrence J. Golden, *Equitable Distribution of Property* § 8.03A (Supp.1992) (discussing finality of property divisions).

account any other compensation—such as workers' compensation, social security, or insurance payments—that Ben receives or will receive for his injuries.

### E. The Judgment for Waste and Costs of Repair

 At the end of his amended findings of fact, Judge Johnstone granted Diane judgment against Ben for any costs of repairs to the Homer property, "[t]o the extent that the structure has suffered from lack of maintenance or outright waste during [Ben's] post-trial occupancy." Ben argues that this finding improperly grants a judgment for waste against Ben and thus lies outside the scope of the remand.

We agree. Diane did not raise the issue of waste in her pleadings or in a cross-appeal. Moreover, Judge Johnstone made no finding that waste in fact occurred, and there is no indication in the record that he heard evidence on the matter. To insert a judgment for waste into the amended findings would deny Ben his right to fully litigate the issue. Therefore, the award for the cost of repairs to the Homer residence was improper.

### F. Credits for Rent and Land Payments that Ben Made During the Proceedings

Before his first appeal to this court in *Murray I*, Ben moved for a stay of Judge Carlson's award of the Homer property. Judge Carlson granted the motion, on the condition that Ben both pay rent to Diane and make land payments on the property. The stay order granted Ben credit for the rent and land payments "[i]n the event that he [was] successful in his appeal." Ben now asserts that his first appeal in *Murray I* was "successful," and that on remand

Judge Johnstone erred in denying him these credits.

However, because the ownership of the Homer residence and property has not been finally decided, Ben's entitlement to these credits has not yet been resolved. If, on remand, the trial court determines that the residence and property should be awarded to Ben, then Ben should receive a "credit" for the rent he has paid to Diane. However, even in this circumstance, Ben would clearly not be entitled to "credit" for payments made on the land.[3]

### III. Conclusion

To summarize, we direct the trial court on remand to issue specific findings in accordance with this opinion and to consider new evidence relevant to the property division as a whole and to the current circumstances of the parties.

**REVERSED** and **REMANDED** for proceedings consistent with this opinion.

**K.N., Appellant,**

v.

---

3. Ben also raises an issue concerning the refusal of his guardian, Tom Owens, to testify at a deposition on March 1, 1991. In response to Owens's refusal to testify, Diane moved for sanctions under Alaska Civil Rule 37, specifically requesting the trial court to preclude Ben from opposing her motion to modify the findings of fact. In his order of July 25, 1991, Judge Johnstone granted Diane the costs of the deposi-

tion, but expressly declined to grant Diane Rule 37 sanctions. Judge Johnstone denied Ben's request for clarification as to whether the order was in fact a discovery sanction.

On appeal, Ben claims that the denial of his motion for clarification was reversible error. We conclude that Ben's argument is without merit.