Thomas E. PRICE, Jr., Appellant,

v.

Mike EASTHAM, Veldon "Spud" Dillon, Lorraine Templeton, Bruce Turkington, Lee Krumm, La Velle Dillon, Bob Fenex, Carol Fenex, Bruce Willard, Linda Willard, Butch Bullard, Gordon Grebe, Diane Grebe, Eric Overson, Sam Matthews, Nancy Matthews, Ray Kranich, Eilene Wythe, Jack Alexander, Sue Alexander, Rick Alexander, Reed Alexander, Dave Sanders, Shirley Sanders, Greg McCullough, Lloyd Moore, Penny Moore, Tammy Hagan, Chuck Hagan, Kate Mitchell, Ben Mitchell, Ronnie Morrison, Barb Hrenchir, Mike Hrenchir, Gus Weber, Rita Weber, Bob Simcoe, Mark Jacobs, Barb Jacobs, Sharon Thompson, Rick Thompson, Fred Thompson, Connie Thompson, Mike Devaney, Rick Anderson, Dave Weber, Mark Robl, Terry Robl, Toras Fisk, Dave Boone, Marasha Boone, George Eschin, Jim Bills, Mike O'Malley, Joe O'Malley, Bill Markel, Gordon Berg, Floyd Newkirk, Karl Horst, Robert Pelky, Robert Plymire, Don Blackwell, Valda Ziemelis, Randy Whitehorn, Connie Whitehorn, Willie Bishop, Hans Albertson, Bill Sampson, Mike Arno, Allen Englebretson, Rodney McLay, Jim Spencer, Jimmy Spencer, Joe Wright, Jason Kinnard, Amy Kinnard, Sam Wright, Paul Budge, Brian Bellamy, Rick Wise, Nathan Wise, John Wise, Jacob Wise, Marty Wise, Jake Ellyson, Carol Ellyson, Bill Sheldon, Leroy Cabana, Sr., Doris Cabana, Larry Cabana, Dawn Cabana, and Scott Connelly, Appellees.

No. S–11647.

Supreme Court of Alaska.

Feb. 3, 2006.

Rehearing Denied April 27, 2006.

Thomas E. Price, Jr., pro se.

Michael Hough, Homer, for Appellees.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

In *Price v. Eastham* (*Price I* ), we held that a public prescriptive easement had been established and remanded the case to the superior court for a determination of the easement's scope.[1] In *Price I*, we discussed the question of scope in some detail, remarking that "[c]ourts have restricted the scope of

1. 75 P.3d 1051, 1059 (Alaska 2003).

2. *Id.*

3. *Id.*

4. Civil Rule 52(a) states in pertinent part: "In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon...."

prescriptive easements significantly to limit the burden on the servient estate"[2] and suggesting that the superior court was "free to impose restrictions upon the easement consistent with the Restatement (Third) [of Property: Servitudes] ... including ... limiting use to certain seasons, prescribing the width of the easement, and specifying the precise uses that may be made of the easement."[3]

Upon remand, the superior court issued an order stating that the easement was to be sixteen feet in width and including a corresponding legal description. Because the order does not satisfy Alaska Rule of Civil Procedure 52(a) and therefore does not permit meaningful review,[4] we remand for a determination of the precise scope of the easement in light of this opinion. We additionally affirm the superior court's refusal to condition the scope of the easement upon approval of a modification to Price's Farm Conservation Plan.

## II. FACTS AND PROCEEDINGS

This case concerns the scope of an easement along a seismic trail crossing the property of Thomas E. Price. The trail was used without incident for many years (since at least 1956) until the late 1990s when trail traffic increased to the point of interfering with Price's quiet enjoyment of his land. Price posted the trail with "No Trespassing" signs in the winter of 1998–99. He replaced the signs each time unknown persons removed them. A group of snowmachine drivers eventually sued Price to settle the dispute.[5]

In its February 9, 2000 decision, the superior court found that a right-of-way existed under 43 U.S.C. § 932, Revised Statute (RS) 2477 and, in the alternative, that a prescriptive easement existed over Price's property.[6]

5. The plaintiff in the trial court was originally the organization Snomads, Inc. Michael Eastham's amended complaint substituted ninety-one individual plaintiffs for the Snomads.

6. To clarify, the trial court did not discuss the prescriptive easement or its scope in its initial decision of February 9, 2000. However, it did hold that a prescriptive easement existed over Price's land in its denial of Price's motion for

The RS 2477 issue had not been raised by the parties at trial.[7] Regarding the scope of the RS 2477 right-of-way, the superior court stated only the general direction of the trail; clarified that it may be used for any purpose consistent with public travel; and declared its width to be "that width established by the traditional use of the trail, but in no place is the right of way narrower than is safe for two snowmachines to pass each other, nor wider than the original width of the seismic trail."

In *Price I*, we held that the superior court's failure to give the parties notice and an opportunity to be heard at trial on the RS 2477 issue violated due process rights and we therefore reversed the superior court's finding of an RS 2477 right-of-way.[8] But we concluded that a public prescriptive easement had been established over Price's property.[9] Since the only relevant discussion of the easement's scope by the superior court concerned the RS 2477 right-of-way, we remanded the case to the trial court to establish the scope of the prescriptive easement.[10] In so doing, we cited to sections 4.1 and 4.10 of the Restatement (Third) of Property: Servitudes, discussed the range of relevant factors, and provided case law to guide the inquiry upon remand.[11]

After the hearing on remand, the superior court issued an order consisting of a single sentence stating that the easement was to be sixteen feet wide and containing a legal description of its general direction including the start and end points. Price now appeals.

## III. DISCUSSION

The most important of Price's arguments on appeal is his complaint that the trial court failed to comply with the requirement of Civil Rule 52(a) that the superior court's order contain specific findings of fact and conclusions of law to permit meaningful review.[12] A superior court's findings are sufficiently "clear and explicit" to satisfy Civil Rule 52(a) if they resolve all critical areas of dispute in the case and are sufficiently detailed to allow for meaningful appellate review.[13] In particular, the superior court must provide findings sufficient to give a clear understanding of the grounds upon which it reached its decision.[14]

In our conclusion in *Price I*, we suggested that the superior court was "free to impose restrictions on the easement consistent with the Restatement (Third) and this decision, including, for example, limiting use to certain seasons, prescribing the width of the easement, and specifying the precise use that may be made of the easement."[15] The order issued by the superior court makes no reference to any limitations to be placed on the easement nor does it explain its reasoning in these terms.

Appellees argue that a common sense reading of the record supports the superior court's order and that a "precise" delineation of the easement was in fact provided by the superior court in its provisions as to width and length of the easement. But in *Price I* we provided guidance on the types of limitations to be considered by the superior court. Unfortunately, the conclusory nature of the superior court's finding is insufficient for us to determine whether the superior court meaningfully considered restrictions on the easement scope. Moreover, Price's evidentiary showing in the hearing on remand raises the question whether appellees are attempting to change the way they are using the easement. Because a change in the use of a prescriptive easement could significantly affect the scope of the easement, we now

---

reconsideration on the original RS 2477 ruling. *Price*, 75 P.3d at 1053.

7. *Id.*

8. *Id.* at 1056.

9. *Id.* at 1056–57.

10. *Id.* at 1058–59.

11. *Id.*

12. Alaska R. Civ. P. 52(a); *cf. Fyffe v. Wright*, 93 P.3d 444, 456 (Alaska 2004); *Ilardi v. Parker*, 914 P.2d 888, 892 (Alaska 1996).

13. *Mapco Express, Inc. v. Faulk*, 24 P.3d 531, 537 (Alaska 2001).

14. *Ilardi*, 914 P.2d at 892.

15. *Price*, 75 P.3d at 1059.

discuss the legal principles and types of facts required to determine whether appellees' present use of the trail is in line with the use that established the prescriptive easement in the first place.[16]

### A. It Was Error for the Superior Court To Fail To Make Findings Sufficient To Allow Meaningful Review of its Reasoning Concerning the Precise Scope of the Easement.

In its decision of February 9, 2000, the superior court acknowledged the basic question that drives this case: what is the proper response when a public prescriptive easement is properly established by a relatively small number of people but is subsequently subject to a dramatic increase in the numbers of those who wish to use it?

This question implicates two separate inquiries: (1) how to delineate the scope of a prescriptive easement at the moment of perfection; and (2) whether a given change or expansion in the scope of that easement is permissible. The two inquiries are inseparable because the original scope of the easement must be fully understood before the second inquiry may begin. The second inquiry requires a comparison be made between the uses made of the easement when it was perfected and the proposed new use.[17]

In *Price I*, we provided guidance to the superior court on both inquiries.[18] We began by noting that "[b]ecause an easement directly affects ownership rights in the servient tenement, judicial delineation of the extent of an easement by prescription should be undertaken with great caution."[19] In citing this language, we echoed the language of section 4.10 of the Restatement that urges a delicate balance be struck between the needs of the easement beneficiary and the owner of the servient estate.[20]

Regarding the first inquiry, the Restatement directs that a prescriptive easement's scope should be determined by the nature of the adverse use that led to its creation in the first place.[21] In *Price I*, we cited the Restatement provision stating that the focus of the inquiry should be placed on the servient estate owner's reasonable expectations.[22] In particular, the inquiry must consider what the servient estate owner "should reasonably have expected to lose by failing to interrupt the adverse use before the prescriptive period had run."[23]

Once the original use and purpose for which the easement was created is understood, the second inquiry begins. The second inquiry must compare the new uses to the old uses of the easement.[24] The comparison is undertaken to answer the question whether a new or challenged use of the easement falls within the purpose for which the easement was originally created.[25] In this

---

16. In *Murray v. Murray*, we faced a situation similar to the procedural facts in Price. 856 P.2d 463 (Alaska 1993). In *Murray I*, a divorce case, we remanded the case to the superior court to make findings sufficient to distinguish between marital and separate property. The trial court's subsequent opinion did not set out the analysis regarding the categorization of property called for in Alaskan case law, but named certain assets and deemed them separate property in a conclusory fashion. As a result, we remanded the case a second time. *Id.* at 466. In our decision, we provided guidance as to the kinds of findings the superior court would need to make in order to answer the questions raised by the case. *Id.* at 466–68; *see also H.C.S. v. Cmty. Advocacy Project of Alaska, Inc. ex rel. H.L.S.*, 42 P.3d 1093, 1101 (Alaska 2002) (court also finds trial court findings insufficient and gives guidance as to what facts must be found to answer the inquiry).

17. *Price*, 75 P.3d at 1058 n. 40; RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 4.10 cmt. d (2000).

18. *Price*, 75 P.3d at 1058–59.

19. *Id.* at 1058 (citing *Wright v. Horse Creek Ranches*, 697 P.2d 384, 388 (Colo.1985)).

20. RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 4.10 cmt. b (2000).

21. *Id.* § 4.1 cmt. a.

22. *Price*, 75 P.3d at 1058 n. 39 (citing RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 4.10 cmt. d (2000)).

23. *Price*, 75 P.3d at 1058 (citing RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 4.10 cmt. d (2000)).

24. RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 4.10 cmt. h (2000).

25. *Id.* § 4.10 cmt. c (2000); *see also Andersen v. Edwards*, 625 P.2d 282 (Alaska 1981).

inquiry, the Restatement urges courts to balance the interests of the servient and dominant estate holders as well as take conservation and neighborhood preservation concerns into account.[26] When a change in the use of a prescriptive easement is involved, the Restatement stresses caution, stating that the "degree of change permitted for a prescriptive easement is generally less than that for an expressly created easement." [27]

In making this second inquiry, the Restatement further notes that conflicts between the original and new uses frequently present factual issues as to "how broadly or narrowly the purpose should be defined, whether the proposed change is reasonably necessary, whether it is of the sort that should have been contemplated by the parties, how much damage or interference is likely to ensue, and whether it is reasonable." [28]

At the evidentiary hearing below and on appeal, Price has attempted to address these factors.[29] Price's main argument is that when compared with previous uses, the establishment of a parking lot and the sudden increase in snowmachines combined to create a use of the trail well outside of his reasonable expectations. In the hearing on remand, Price tried to present evidence concerning the establishment of a new parking lot near the trail. The superior court stopped Price, stating that the goal of the hearing was to determine the scope of the easement and, crucially, refused to consider the motivations of the appellants in changing the use of the easement. But the Restatement (Third) does direct the courts to include an inquiry into the motivations behind any change proposed by the easement holder in the use of the easement.[30]

Price's argument depends in large part on the date this easement was perfected. The emphasis in the inquiry is on whether the challenged use can be shown to have been conducted continuously for at least ten years. In this case, the ten-year period should be measured back ten years from the first attempt to block its use. Since Price posted the trail with "No Trespassing" signs in the winter of 1998–99, the date of perfection (in retrospect) is 1988–89. According to the two-step analysis of the Restatement, the superior court must first examine the uses of the easement made in 1988–89 and then proceed to compare them with later uses of the trail.

Price's argument therefore hinges on the factual inquiry as to whether the use of the trail changed dramatically in 1996. In the record before us, there is evidence to suggest a significant change in use. In its opinion of February 9, 2000, the superior court notes that evidence in the record suggests that the trail was used only occasionally for many years by a small number of people. It is

---

**26.** RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 4.10 cmt. h (2000). Comment h states: "Although generally easements are permitted to evolve along with the properties they serve, the outcome in individual cases may depend on how fast the transition is taking place in the area and whether the easement was created by grant or prescription. The degree of change permitted for a prescriptive easement is generally less than that for an expressly created easement. In balancing the interests of the dominant and servient estate holders, conservation and neighborhood preservation concerns should be relevant as well as developmental concerns."

**27.** *Id.*

**28.** *Id.* § 4.10 cmt. c.

**29.** In *Price I,* we provided the superior court guidance in the application of these principles in the form of case law exemplifying the rule that subsequent uses of an easement must be reasonably related to uses made during the prescriptive period. *Price* at 1058 nn. 37, 40, 41, 42 and cases cited therein. In several of these cases, section 478 of the Restatement (First) of Property is relied upon as a guide for discussion. *See e.g., Twin Peaks Land Co. v. Briggs,* 130 Cal.App.3d 587, 593–95, 181 Cal.Rptr. 25 (1982); *Wright v. Horse Creek Ranches,* 697 P.2d 384, 388–89 (Colo.1985); *Benner v. Sherman* 371 A.2d 420, 422 (Maine 1977). Section 478 states that in ascertaining whether a particular use is permissible under an easement created by prescription, a comparison must be made between such use and the use by which the easement was created with respect to (a) their physical character, (b) their purpose, and (c) the relative burden caused by them upon the servient tenement. RESTATEMENT (FIRST) OF PROP. § 478 (1944) ("Factors in Ascertaining Extent of Easements Created by Prescription"). Price uses this terminology in his brief, but we use the language of the Restatement (Third).

**30.** RESTATEMENT (THIRD) OF PROP.· SERVITUDES § 4.10 cmts. f, g, h (2000).

uncontroverted that a parking lot was subsequently established in 1996 near the trailhead of the easement and a new trail linking the parking lot to the original trail was established soon thereafter. Price provides evidence to show that before the establishment of the parking lot, the public had used other trails to access the Caribou Hills development. Price's witness in the hearing on remand also expressed his opinion that the only reason the trail goes where it does is because of the new parking lot.

Price also complains that his estate is being unreasonably burdened by the present use of the trail. During the hearing on remand, the superior court first mistook Price's presentation of evidence showing increased use, erosion and environmental damage to his estate as an attempt to dispute the establishment of the easement and then questioned the relevance of his evidence on environmental erosion. But Price's evidence concerning environmental damage to his estate is germane to the issue of easement scope. The Restatement approach directs the courts to take conservation and neighborhood preservation concerns into account when balancing the interests of the dominant and servient estate holders.[31] Price's evidence of erosion damage occurring in recent years could also suggest that the change in use has been both significant and unexpected when compared to previous uses.

To address the Restatement's emphasis on the reasonable expectations of the landowner,[32] Price points out that he did not feel the need to dispute the use of the trail prior to

1998 precisely because that use was sporadic and did not interfere with his operations on the land. To forestall any argument that he sat on his rights with regard to this new use of the easement, Price also takes pains to point out that he protested the non-consensual increase in use of the trail (by posting "No Trespassing" signs) within two years of the establishment of the parking lot and well within the ten-year prescriptive period.

In short, Price's position is that the purpose for which the trail was expanded (and marked and groomed for the first time) after 1996 was to accommodate the increased traffic from the parking lot. He argues that this purpose is quite different from the purpose for which the original easement was established, that is, occasional recreational use and access to three residences. He places particular emphasis on how the trail went from a normal trail to a "snowmachine superhighway" quite suddenly. Price's argument echoes the analysis in several cases in which an increase in intensity, frequency, and manner of use—particularly a sudden increase in traffic[33]—on an easement due to circumstances beyond the reasonable expectations of the servient estate-owner was held to be impermissible.[34]

In response to Price's arguments, Eastham provides a list of people who over the last forty years have used the trail for various purposes, including for access to Caribou Lake residences as well as for recreational uses. But Eastham does not cite to evidence in the record that would demonstrate a lack

**31.** *Id.* § 4.10 cmts. f, h.

**32.** *Id.* § 4.1 cmt. h.

**33.** *Id.* § 4.10 cmt. f; *see also Gibbens v. Weisshaupt*, 98 Idaho 633, 570 P.2d 870, 876 (1977) (holding that an increase in degree of use due to commercial activities and additional residences on the dominant tenement is an unreasonable expansion of prescriptive easement); *Gutcheon v. Becton*, 585 A.2d 818, 822 (Me.1991) (holding that increased use did not burden servient estate because there was no evidence of increased noise or other effluence associated with traffic); *Leffingwell Ranch, Inc. v. Cieri*, 276 Mont. 421, 916 P.2d 751, 757 (1996) (holding that subdivision of ranch parcel into 174 units resulted in overburden of easement created for access to three homesteads); *Cote v. Eldeen*, 119 N.H. 491, 403 A.2d 419, 420–21 (1979) (holding that daily com-

mercial use of easement by large trucks exceeded scope of prescriptive easement since prior use was occasional and non-commercial).

**34.** *See Wright v. Horse Creek Ranches*, 697 P.2d 384, 388 (Colo.1985) (holding that development altering the physical characteristics of a road imposed additional and non-consensual burdens on the estate and was an impermissible change of use); *Block v. Sexton*, 577 N.W.2d 521, 525–26 (Minn.App.1998) (holding that extent of prescriptive easement should not be enlarged beyond objects originally contemplated); *Hash v. Sofinowski*, 337 Pa.Super. 451, 487 A.2d 32, 35 (1985) (noting that court should act with care in determining the width of a prescriptive easement).

of change in the type or intensity of use of the easement. Eastham also fails to argue or point to evidence supporting a conclusion that even if the uses are new, they are substantially similar to previous uses and, therefore, fall well within Price's expectations.[35]

On the other hand, Eastham does point to evidence concerning the variety of the trail's uses that go to the issue of seasonality as well as to evidence indicating the present width of the trail and industry standards concerning the width of snowmachine trails. In response to Price's argument that the snowmachiners can use a different trailhead, one that is in the process of being established by the Homer Soil and Water District, Eastham cites to evidence showing that the trail over Price's land leads to three other trails and allows access to different directions. Eastham uses this evidence to argue that the trail over Price's land is therefore distinct from and serves different purposes from the proposed trailhead. Eastham also refers us to evidence to show that this proposed trailhead is three miles away from the present parking lot and, as it is illegal to drive snowmachines along the road, is not useful to the snowmachiners.

It is of course the function of the superior court to judge witness credibility and weigh conflicting evidence.[36] If, as in this case, most of the evidence is oral testimony, or if the superior court's factual determinations depend largely on conflicting testimony, then the superior court's greater ability to assess witness credibility requires deferential review by this court.[37] But the superior court must nonetheless make its findings with sufficient specificity that we may review both the grounds for its decision and its application of the law to the facts.

We therefore remand the case for a determination of the scope of the easement in light of the analysis contained in sections 4.1 and 4.10 of the Restatement and our discussion in *Price I*. The analysis should also examine changes in the use of the easement since 1988–89. In undertaking this analysis, the superior court may, in its discretion, conduct additional evidentiary hearings concerning the changes in frequency, intensity, and manner of use of the easement.[38]

### B. The Superior Court Did Not Err When It Refused To Condition the Scope of the Prescriptive Easement upon Approval of Appellees' Application for a Modification of Price's Farm Conservation Plan.

■ Price also argues that the superior court should have conditioned the use of the prescriptive easement on Eastham's first securing approval from the relevant regulatory authorities for a modification to Price's Farm Conservation Plan.[39] Eastham argues that this is a new argument and therefore impermissible upon appeal.

■ We have stated that we "will not consider on appeal new arguments which (1) depend on new or controverted facts; (2) are not closely related to appellant's arguments at trial; and (3) could not have been gleaned from the pleadings, unless the new issue raised establishes plain error."[40] On the other hand, we have also noted that the

---

**35.** If Eastham can show that snowmachiners were using the trail at as high a rate as they now use it before the establishment of the parking lot and for at least ten years, then Price cannot complain that the challenged use is outside of his expectations. If Eastham cannot make this showing, then Price is protected from an invasive use of his land because he acted promptly and did not sit on his rights. This balance between the establishment of potentially beneficial new uses and the preservation of the rights of landowners is exactly that which the Restatement seeks to establish. *Cf.* RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 4.10 cmt. c (2000).

**36.** *In re Adoption of A.F.M.*, 15 P.3d 258, 262 (Alaska 2001).

**37.** *Vezey v. Green*, 35 P.3d 14, 19–20 (Alaska 2001).

**38.** *Murray*, 856 P.2d at 466.

**39.** Price owns only the agricultural interest in his land. *Price*, 75 P.3d at 1057. Price argues that since he must prepare and submit a proposed amendment to his Farm Conservation Plan whenever he wishes to change his use of the land, the users of the prescriptive easement should be forced to do the same.

**40.** *Krossa v. All Alaskan Seafoods, Inc.*, 37 P.3d 411, 418–19 (Alaska 2001).

pleadings of pro se litigants should be held to less stringent standards than those of lawyers [41] and have explained that the briefs of pro se litigants are to be read "generously." [42]

In this case, Price did not make his Farm Conservation Plan argument at the trial court level or upon appeal in *Price I* and failed to raise this issue at the remand hearing after our decision in *Price I*. Thus, he has failed to preserve this claim on appeal.[43] Moreover, even if Price had mentioned this argument during the hearing on remand, his failure to raise the argument in *Price I* would still preclude him from raising the issue for the first time in this appeal.[44] As we have noted, an appeal "should narrow the issues in a case, not expand them." [45]

## IV. CONCLUSION

The evidence presented in the record is well suited to answer the question presented in *Price I*, that is, whether an easement over Price's land existed in the first place. But it is presently not in a form proper to the precise delineation of the scope of the easement in light of the direction provided by us in *Price I* or by the Restatement (Third).

To determine the scope of the public prescriptive easement on Price's land, the superior court must make specific factual findings regarding the dates to be ascribed to the prescriptive period; the original purpose and use of the easement; any changes that have been made in the use of the easement; and, finally, the reasonableness of that change, taking into account such factors as the speed of the changes in use, damage to the estate, and the reasonable expectations of the servient landowner. Therefore, we REMAND the case to the superior court for such findings and both parties should prepare to address the factors at issue.

41. *Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987) (citing *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)).

42. *Hymes v. Deramus*, 119 P.3d 963, 965 (Alaska 2005).

43. *See Sea Lion Corp. v. Air Logistics of Alaska, Inc.*, 787 P.2d 109, 115 (Alaska 1990).

As Price failed to raise his third issue in *Price I* or during the hearing on remand, we AFFIRM the superior court's decision to refuse to condition the prescriptive easement upon approval of appellees' application for a modification of Price's Farm Conservation Plan.

44. *Cf. State, Comm. Fisheries Entry Comm'n v. Carlson*, 65 P.3d 851, 873 (Alaska 2003); *Univ. of Alaska v. Simpson Bldg. Supply Co.*, 530 P.2d 1317, 1323–24 (Alaska 1975).

45. *Carlson*, 65 P.3d at 873–74.