NOTICE

*The text of this opinion can be corrected before the opinion is published in the* *Pacific* *Reporter.* *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

ARTHUR J. AUGUSTINE,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-12659
Trial Court No. 4FA-12-00482 CR

O P I N I O N

No. 2668 — June 26, 2020

Appeal from the Superior Court, Fourth Judicial District, Fairbanks, Michael P. McConahy, Judge.

Appearances: Josie W. Garton (opening brief) and Laurence Blakely (reply brief), Assistant Public Defenders, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Diane L. Wendlandt, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, Harbison, Judge, and Mannheimer, Senior Judge.[*]

Judge MANNHEIMER.

---

[*] Sitting by assignment made pursuant to Article IV, Section 11 of the Alaska Constitution and Administrative Rule 23(a).

Arthur J. Augustine was convicted of sexually abusing his two grand-daughters. The State's evidence against Augustine was based almost completely on the out-of-court statements of the two children. These out-of-court statements were conveyed to the jury through video-recorded interviews of the children, as well as the hearsay testimony of adults.

The trial judge admitted the children's recorded interviews under the provisions of Alaska Evidence Rule 801(d)(3). This evidence rule declares that the recorded pre-trial statement of a crime victim is exempted from the hearsay rule if the victim is under 16 years old, if the child is available for cross-examination at trial, and if the out-of-court statement was taken under circumstances that satisfy the other criteria listed in subsections (A) through (H) of the evidence rule.

Most of the criteria listed in Rule 801(d)(3) concern factual issues, such as whether the interview with the victim was conducted before the proceeding, and whether the victim's statement was recorded in a format that preserves both the audio and video components of the statement. But two of the criteria — (d)(3)(F) and (d)(3)(H) — require the trial judge to exercise judgement after evaluating the entirety of the circumstances surrounding the victim's statement.

Under subsection (d)(3)(F), the State must prove that "the taking of the statement as a whole was conducted in a manner that would avoid undue influence [on] the victim". And under subsection (d)(3)(H), the judge must additionally "determine that [the out-of-court statement] is sufficiently reliable and trustworthy", and that "the interests of justice are best served by admitting the recording [of the statement] into evidence."

In our first decision in this case, *Augustine v. State*, 355 P.3d 573 (Alaska App. 2015), we concluded that the trial judge failed to hold the State to its burden of proof under subsection (d)(3)(F), and that the trial judge failed to fulfill his role as

evidentiary gatekeeper under subsection (d)(3)(H). We therefore remanded Augustine's case to the superior court for reconsideration of whether the children's out-of-court statements should have been admitted. [1]

The superior court has now reconsidered the matter and has issued its decision on remand, again ruling that the children's out-of-court statements were properly admitted at Augustine's trial. But the superior court's explanation of its decision is so conclusory that we cannot meaningfully review the court's ruling. We must therefore remand this case to the superior court once more.

To fully explain why we conclude that the superior court's decision is inadequate, we must describe the procedural history of this litigation in some detail, and the various reasons why one might potentially doubt the credibility or reliability of the children's out-of-court statements. Only then can readers understand why the superior court failed to offer a sufficient explanation of its ruling to allow meaningful appellate review.

*The original litigation regarding the admissibility of the children's recorded interviews, and this Court's decision on direct appeal*

State Trooper Investigator Yvonne Howell was assigned to investigate Augustine's potential sexual abuse of his two granddaughters, M.Y. and T.Y. During her investigation, Howell conducted four video-recorded interviews of the girls. (Howell interviewed each girl twice, on succeeding days.)

About three weeks before Augustine's trial was scheduled to begin, the State filed a motion seeking the trial court's permission to introduce Investigator Howell's four recorded interviews of the children pursuant to Evidence Rule 801(d)(3).

---

[1] *Augustine*, 355 P.3d at 585-86.

Augustine's attorney opposed the State's motion. In his opposition, the defense attorney relied primarily on the information and assertions contained in a nine-page report prepared by Dr. John C. Yuille, a forensic psychologist. Dr. Yuille's report addressed several potential problems with the way in which Investigator Howell interviewed M.Y. and T.Y., and the resulting potential unreliability of the children's statements during those interviews.

In our initial opinion in this case, we described Dr. Yuille's report in some detail — not as an endorsement of Dr. Yuille's analytical approach, or his conclusions, but rather to demonstrate that Augustine's attorney offered substantive reasons to doubt the reliability of M.Y.'s and T.Y.'s statements to Investigator Howell.

In his report, Dr. Yuille offered his views on the general principles that an investigator must be aware of, and adhere to, when conducting an investigative interview of a child, so as to "maximize the information obtained from the child while minimizing the contamination of the child's memory". Under these principles, an interviewer should (1) avoid leading questions, (2) allow children to take their time and describe things in their own words, (3) obtain as much independent information as possible, to give the interviewer an objective basis for assessing the credibility of the child's account, and (4) avoid going into the interview with only one working hypothesis, an approach that can "blind" the interviewer to other relevant information that the child may have.

Dr. Yuille's report explained that he and his colleagues (from Europe and the United States) had developed a set of two dozen criteria for evaluating a child's statement about alleged abuse — more specifically, for evaluating whether it is likely that the child's assertions and descriptions are based on memories of real experiences, rather than things the child has "only imagined or heard about".

According to Dr. Yuille, any investigative interview of a child should be evaluated according to the presence or absence of these twenty-four criteria. But among

– 4 – 2668

the twenty-four, five criteria are critical, in the sense that all five usually should be present if the child is indeed describing real experiences. According to Dr. Yuille, the five primary criteria are: (1) the allegation should be of a coherent event, (2) the child should describe this event in a spontaneous fashion, (3) the child's description should have the quantity and quality of detail one would expect from this particular child, and, if the child has reached school age, (4) the child's allegation should include an age-appropriate sense of time and space, and (5) it should include age-appropriate descriptions of the child's interactions with the perpetrator.

In addition to describing this general approach to conducting investigative interviews of children, Dr. Yuille also offered an evaluation of Investigator Howell's interviews with M.Y. and T.Y. In his introduction to this critique, Dr. Yuille explained that he did not intend his remarks to be "viewed as a criticism of the officer", but rather a criticism "of the organization that did not provide [her with] the appropriate training to perform this type of interview."

According to Dr. Yuille, the four interviews in question (the two interviews of M.Y. and the two interviews of T.Y.) were "uniformly of poor quality". Dr. Yuille noted that the interviews were "characterized by the use of leading questions [and] multiple choice questions." Based on the content of Howell's questions, Dr. Yuille characterized the interviews as "attempts to prove what the interviewer [already] believed had happened", rather than open-ended investigative efforts.

Dr. Yuille then criticized several of the interviewing techniques that Howell used when she interviewed the children:

- Howell allowed the children to draw throughout the interviews. According to Dr. Yuille, "[d]rawing is a distracting activity and it interferes with effective interviewing."

• Many of Howell's questions were "multiple-choice" questions — questions that offered the children a selection of answers. According to Dr. Yuille, a person who conducts an investigative interview of a child must avoid multiple-choice questions because "children ... will typically guess one of the alternatives even if they have no memory." This means that a child's answers to such questions are "often unreliable".

• Howell repeatedly used leading questions during all four interviews, making it "impossible to tell" whether the children's answers were reliable or were, instead, "a result of the leading nature of the question."

    (Dr. Yuille listed these examples of leading questions that Howell asked the children: "Did he tell you not to tell?"; "Are there any spots on his penis?"; "Is there a mole or mark on his penis?")

• Dr. Yuille also pointed out that, in response to Howell's leading questions during her interview with T.Y. on February 15th, the girl gave inconsistent descriptions of the same event: When Howell asked T.Y., "Did you go?", T.Y. replied, "Yes." But a little later, when Howell phrased the question as, "Did he make you stay?", T.Y. replied that Augustine made her stay.

• Based on the tenor of Howell's questions as a whole, Dr. Yuille concluded that the four interviews "were driven by a single hypothesis" — the theory that Augustine had committed an offense. According to Dr. Yuille, "[t]he biggest single impediment to effective investigation is interviewer bias" — not bias in the sense of personal enmity or prejudice, but rather in the sense that the interviewer is attempting "to prove a particular hypothesis rather than [conduct] an investigation to determine what may or may not have happened."

    In his concluding paragraph, Dr. Yuille summed up his evaluation of the interviews with the following observations:

Four poor quality interviews were conducted with these two children. No attempt was made to determine what may or may not have happened in this case: the interviews were intended to prove that the suspect had offended against these children. The biased interviews were characterized by leading questions and multiple choice questions. Little information was obtained from the children[,] and what was obtained was of questionable reliability. Proper, effective, non-leading interviews of these children are needed to determine what, if anything, may have happened in this case. At present, an assessment of the credibility of the allegations is impossible.

When the State formally sought admission of Investigator Howell's four interviews with the children, the defense attorney's opposition to this evidence rested heavily on the conclusions that Dr. Yuille reached in his report. The defense attorney echoed four of Dr. Yuille's primary criticisms of the way that Investigator Howell handled the interviews — that Howell had undermined the reliability of the interviews by: (1) asking leading questions; (2) asking multiple-choice questions and compound questions; (3) asking questions which suggested that Howell already believed the accusations against Augustine, and that she was looking for answers that would support those accusations; and (4) allowing the girls to distract themselves by drawing pictures throughout the interviews.

In addition, the defense attorney argued that the girls' statements had been influenced by their mother's pre-interview interactions and conversations with them — interactions and conversations which the attorney characterized as both "inflammatory" and "suggestive".

Over the defense attorney's objections, the trial judge ruled that the recorded statements of the two children met the requirements of Evidence Rule 801(d)(3), and that those out-of-court statements were therefore admissible.

During Augustine's trial, Dr. Yuille was called as a defense witness. In his testimony, Dr. Yuille described the basic principles that criminal investigators should adhere to when they interview children, and he reiterated (and expanded upon) many of his concerns about the way in which Investigator Howell conducted the interviews in this case.

When the defense attorney asked Dr. Yuille to evaluate those interviews in light of the principles and concerns he described in his report and in his testimony, Dr. Yuille responded that all four interviews "were poorly conducted", that they were "driven by ... a single hypothesis" (*i.e.*, that Augustine was guilty), and that the interviews were "characterized by leading and multiple-choice questions" — types of questions which, according to Dr. Yuille, tend to yield unreliable answers. Dr. Yuille concluded that, because of the poor quality of these interviews, it was impossible to say whether the children gave reliable answers to Investigator Howell's questions.

*Our remand to the superior court*

As we explained in our previous decision in this case, even though the superior court ruled that the children's statements to Investigator Howell met the foundational requirements for admission under Evidence Rule 801(d)(3), the record of the superior court proceedings failed to show that the judge meaningfully evaluated whether the State had satisfied the requirements of criteria (F) and (H) of that rule. In other words, the trial judge failed to meaningfully evaluate whether "the taking of the statement[s] as a whole was conducted in a manner that would avoid undue influence [on] the victim[s]", and whether those statements were "sufficiently reliable and trustworthy".

We therefore remanded Augustine's case to the superior court, so that the judge could re-assess whether the State established a proper foundation for the admissibility of the children's out-of-court statements under Evidence Rule 801(d)(3). *Augustine*, 355 P.3d at 585–86.

In addition to the concerns raised by Dr. Yuille's analysis, we directed the superior court to consider one additional circumstance that potentially affected the reliability of the children's out-of-court statements: the fact that the children were interviewed by the lead investigator assigned to the case. *Id.* at 586–87.

Subsection (F) of Evidence Rule 801(d)(3) requires the State to prove that "the taking of the statement as a whole was conducted in a manner that would avoid undue influence of the victim". When Senator Hollis French, the sponsor of proposed Evidence Rule 801(d)(3), explained this requirement to the Senate Judiciary Committee, he told the Committee that it was important for the interviewer to be specially trained because "[k]ids are obviously easily led, and it's real important that you not put words in their mouths, [that] you let them tell their own story", so that "we're not convicting people based on ... fairy tales." Senator French warned the Committee members about "the early days of child sex abuse prosecutions, when you had folks really taking kids by the nose and getting [them to make] some astonishingly awf[ul], untruthful statements."[2]

This insistence that the interview be neutral and non-suggestive is written into a separate clause of Evidence Rule 801(d)(3). Under subsection (C) of the rule, the prosecutor and the defense attorney are forbidden from participating in the interview; indeed, they are prohibited from being present at all. But if the attorneys representing the State and the defendant are barred from participating, so as to preserve the neutrality

---

[2] *Augustine*, 355 P.3d at 583, quoting the proceedings of the Senate Judiciary Committee on March 31, 2005 pertaining to Senate Bill 117 (24th Legislature).

and non-suggestiveness of the interview, the participation of agents of those attorneys — their paralegals and their investigators — would seemingly raise the same concerns.

Here, Investigator Howell already knew about the children's prior accusations of abuse when she interviewed the children, so there was at least a potential danger that the children's responses during the interviews could have been influenced by Howell's knowledge and her expectations — even though, outwardly, there was nothing suggestive about the interview procedure. Compare *Tegoseak v. State*, 221 P.3d 345, 351–362 (Alaska App. 2009), where we discussed the potential ways in which a police interviewer could unconsciously influence the result of a photographic lineup.

*The superior court's decision on remand, and why we conclude that the court's decision is not adequate to allow meaningful appellate review*

On remand, after allowing the parties to file supplemental briefs, Augustine's trial judge issued a written decision in which he again concluded that the State had satisfied the requirements of Evidence Rule 801(d)(3) — in particular, the requirements of subsections (F) and (H).

However, the bulk of the judge's decision was a summary of the procedural history of this litigation (including this Court's earlier decision on appeal). The judge offered only a conclusory explanation for his ruling that the children's out-of-court statements were admissible under Rule 801(d)(3). The judge acknowledged that Dr. Yuille had offered substantive reasons to doubt the reliability of the children's statements from the police interviews, but the judge declared that he did not find Dr. Yuille's concerns to be "persuasive".

The basic problem now faced by this Court is that the trial judge did not explain *why* he concluded that Dr. Yuille's concerns were not "persuasive". The judge simply stated that he had examined the record in light of the concerns raised by

Dr. Yuille, and that he had again concluded that the foundational requirements of Evidence Rule 801(d)(3) were satisfied. This conclusory ruling is not sufficient to enable this Court to meaningfully review the judge's decision.

As our supreme court stated in *Hanlon v. Hanlon*, 871 P.2d 229, 233 (Alaska 1994), "To permit meaningful appellate review, the trial court must provide [the appeals] court [with] a clear understanding of the basis of the trial court's decision" — an explanation that enables the appeals court "to determine the ground on which the trial court reached its decision." At a minimum, a trial court's ruling must show that the court considered each significant issue, and the ruling must also reveal the basis of the court's decision. [3]

When a trial court's decision is not sufficiently detailed or sufficiently explicit to allow meaningful review, an appeals court must remand the case to the trial court, directing the court to provide a fuller explanation of its ruling. [4] That is what we must do in Augustine's case.

*The trial court's task on remand*

We now will describe, in some detail, the kind of explanation we expect the superior court to provide on remand.

When the State offers evidence of a child's out-of-court statement under Evidence Rule 801(d)(3), it is the State's burden to establish the foundational requirements of that rule — in particular, to establish that the statement was taken in a

---

[3]  *McKitrick v. Public Employees Retirement System*, 284 P.3d 832, 839 (Alaska 2012).

[4]  *Samuel H. v. Office of Children's Services*, 175 P.3d 1269, 1274–75 (Alaska 2008); *S.L. v. J.H.*, 883 P.2d 984, 986 (Alaska 1994); *Murray v. Murray*, 856 P.2d 463, 466 (Alaska 1993).

manner that avoided undue influence on the child, and that the child's statement was sufficiently reliable and trustworthy. *See* Evidence Rule 801(d)(3)(F) & (H).

### (a) The manner in which the children were interviewed

In our original decision in this case, we described Dr. Yuille's report in some detail. Our purpose was not to endorse his approach or his conclusions, but rather to demonstrate that Dr. Yuille offered substantive reasons to doubt the reliability of the four video-recorded statements in this case.[5]

If Augustine's trial judge has concluded that, despite these potential grounds for doubting the reliability of the children's statements, the State successfully demonstrated that the statements met the foundational requirements of Rule 801(d)(3), then the judge must provide a substantive explanation of why he reached this conclusion.

For example, Dr. Yuille stated that allowing children to draw during forensic interviews is a distracting influence, and that it interferes with effective interviewing. The trial judge apparently found this assertion unpersuasive, but the judge never explained why.

Did the trial judge conclude, as a general matter, that allowing children to draw during an interview is not distracting, and that it does not interfere with effective forensic interviewing? Or did the judge conclude that allowing the children to draw during the interviews could potentially have been distracting, but that it was not distracting in this case? (And if so, why was it not distracting in this case?) Or did the judge conclude that the children may have been distracted by their drawing, but that the State nevertheless showed that the children's statements were reliable? On remand, the

---

[5]    *Augustine*, 355 P.3d at 578.

judge must explain what conclusion he reached on these matters, and the judge must explain his reasons for reaching that conclusion.

Similarly, Dr. Yuille stated that Investigator Howell's use of multiple-choice questions, as well as the investigator's use of leading questions, were two other aspects of the interviews that undermined the reliability of the children's statements. Did the trial judge conclude, as a general matter, that Dr. Yuille was wrong when he asserted that multiple-choice and leading questions can undermine the reliability of children's statements during a forensic interview? Or did the judge accept Dr. Yuille's premise that multiple-choice and leading questions can undermine the reliability of children's statements, but the judge nevertheless found that the State had showed that Investigator Howell's use of these types of questions did not undermine the reliability of the children's statements in this case? (And if so, how did the State make this showing?) Or did the judge conclude that Howell's use of multiple-choice and leading questions partially undermined the reliability of the children's statements, but that other aspects of the interviews demonstrated that the children's statements were nonetheless reliable? Again, on remand, the judge must explain which of these conclusions (or some other conclusion) he reached, and why.

We note that Augustine has pointed to a number of multiple choice questions and leading questions that, according to Augustine, undermined the reliability of the children's statements. Although the trial judge need not address every example cited by Augustine, the judge should at least address the most striking examples and explain why he concluded that, despite Howell's method of questioning, the State showed that the children's statements were reliable.

We further note that, in our earlier opinion, we expressly directed the trial judge to consider the potential problem created by the fact that the person who interviewed the children — Investigator Howell — was the lead investigator in this case.

We noted the possibility that, because of Howell's pre-knowledge of the investigation, she might have unwittingly influenced the children's answers to her questions. This concern was accentuated by Dr. Yuille's analysis that Howell's questioning of the children appeared to be "driven by ... a single hypothesis": that Augustine was guilty.

The trial judge apparently rejected the notion that Investigator Howell, because of her pre-knowledge of the investigation, and because of her method of questioning, might have undermined the reliability of the children's answers during the forensic interviews. But again, the judge must explain why he concluded that the State demonstrated the reliability of the children's statements despite this potential problem.

### (b) The testimony of Lori Markkanen

At Augustine's trial, the State endeavored to rebut the testimony presented by Dr. Yuille by presenting the testimony of Lori Markkanen, the program manager and forensic interviewer at Stevie's Place child advocacy center. Because there is a possibility that the trial judge will rely on Markkanen's testimony on remand, we wish to explain our concerns about that testimony — concerns that the judge should address if he chooses to rely on Markkanen's testimony on remand.

In her testimony, Markkanen often agreed with Dr. Yuille's analysis of the problematic aspects of the interviews, although she disagreed with his ultimate conclusion. However, some of Markkanen's reasons for disagreeing with Dr. Yuille appear to be questionable. For example, Dr. Yuille testified that children are considerably more suggestible than adults. In response, Markkanen asserted that "there's a lot of research that has been conducted with children ... , and what the data shows is that school-age children are not coming out statistically more suggestible than adults are."

But when Markkanen was asked to support this assertion, she only cited a single study from 1995. This study supports the conclusion that all children between the ages of 3 and 6 are suggestible (*i.e.*, they will, under certain circumstances, attest to facts that are not true).[6] The study also supports the conclusion that, within this group of children, the ones who are 3 or 4 years old are considerably more suggestible than the ones who are 5 or 6 years old.[7] More importantly, the study does not support Markkanen's assertion that 5- to 6-year-old children are no more suggestible than adults — because there was no adult control group in the study.

Furthermore, even assuming that adults are just as suggestible as 5- or 6-year-old children, this fact, standing alone, would not be a legitimate basis for concluding that the interviews in this case were reliable. As the Alaska Supreme Court discussed in *Young v. State*, unnecessarily suggestive police identification procedures can undermine the reliability even of adult eye-witness testimony, to the point where that testimony must be excluded from evidence.[8]

We also note that Markkanen had considerably less experience and expertise than Dr. Yuille. Dr. Yuille received his doctorate in forensic psychology more than 50 years ago. In the 1980s, he began focusing on forensic interviews of child witnesses, and he developed the first protocol for interviewing children in criminal child protection investigations. Dr. Yuille testified that a significant portion of his current work involves training law enforcement officers on how to properly interview child witnesses. He also testified that he has published over 120 scholarly works, including

---

[6] Michelle D. Leichtman & Stephen J. Ceci, *The Effects of Stereotypes and Suggestions on Preschoolers' Reports*, Developmental Psychology, Vol. 31, No. 4, pp. 568–578 (1995).

[7] *Id.*

[8] *Young v. State*, 374 P.3d 395, 417–426 (Alaska 2016).

works on interviewing children, and that his most recent publication discussed the latest developments in this field.

Markkanen, in contrast, holds bachelor's degrees in language arts education and special education. Although the emphasis of her special education degree was on mental health and behavioral issues (including developmental psychology), she does not hold a degree in psychology, and she has never published research in this area. Markkanen has experience working in and managing programs for children (especially children with disabilities), but she had no particular experience in forensic psychology or forensic interviewing before she came to work for Stevie's Place in 2008. Her training in the methods of conducting forensic interviews of children consisted of her attending several forty- to sixty-hour seminars — the type of forensic training seminars that are taught by Dr. Yuille.

We do not mean to suggest that the trial judge was required to credit Dr. Yuille's testimony over Markkanen's testimony simply because Dr. Yuille was more qualified or had more experience. Highly qualified experts can still be incorrect, and the weight or credibility of competing testimony obviously should not be reduced to a battle of resumes. Rather, we mean to emphasize the importance of the judge's duty to provide an explanation for his rulings.

Here, Markkanen had less expertise and experience, and she was often unable to provide support for her claims. If the trial judge was relying on Markkanen's testimony when he concluded that Dr. Yuille's report and testimony were not persuasive, the judge should explain why he relied on Markkanen's testimony despite these deficiencies.

*Conclusion*

It is important to recognize what is at stake when the State offers a child's out-of-court statements under Evidence Rule 801(d)(3). In many instances, the child's recorded interview(s) — statements that would otherwise be inadmissible hearsay — will be the linchpin of the State's case. And in some cases (as was true in this case), these out-of-court statements will essentially be the State's only evidence. Thus, a trial judge's decision to admit or exclude these statements will often have a decisive impact on the outcome of the trial.

For this reason, when the State asserts that a child's out-of-court statements are sufficiently reliable to justify their admission under Evidence Rule 801(d)(3), trial judges bear a great responsibility to approach this matter carefully and seriously, to make sure that the State is put to its proof regarding the foundational requirements of Rule 801(d)(3).

Under subsection (F) of Evidence Rule 801(d)(3), the State must prove that "the taking of the [child's] statement as a whole was conducted in a manner that would avoid undue influence [on] the victim". And under subsection (H) of this rule, the State must additionally prove that the child's statement is "sufficiently reliable and trustworthy", and that "the interests of justice are best served by admitting the recording [of the statement] into evidence."

As we explained in our first opinion in this case, a trial judge is not allowed to pass this responsibility on to the jurors. A judge cannot simply decide that the child's out-of-court statements *might* be reliable and trustworthy, and then admit the evidence and trust the jury to sort it out. Rather, Evidence Rule 801(d)(3) requires the judge to decide whether the State has affirmatively proved the foundational elements that authorize the admission of the child's out-of-court statements. And as this Court clarifies

today, this means that a trial judge must explain their decision with sufficient detail to allow this Court to fulfill its duty of meaningful appellate review.

We therefore again direct the superior court to re-assess the admissibility of the children's four out-of-court interviews under Evidence Rule 801(d)(3). Within 90 days, the superior court shall provide this Court with a supplemental ruling which (1) identifies the particular issues that the court considered and (2) explains why the court concluded that, despite the various concerns raised by Dr. Yuille and by this Court in our prior decision, the State nevertheless proved all of the foundational elements required by Evidence Rule 801(d)(3).

Upon our receipt of the superior court's supplemental ruling, we shall resume our consideration of this case.