Frank J. ILARDI, Appellant,

v.

Joyce A. PARKER, n/k/a Joyce
A. Ilardi, Appellee.

No. S–7121.

Supreme Court of Alaska.

April 19, 1996.

M. Gregory Oczkus, Greg Oczkus Law Office, Anchorage, for Appellant.

Andrew J. Fierro, Kemppel, Huffman and Ginder, P.C., Anchorage, for Appellee.

Before COMPTON, C.J., RABINOWITZ, MATTHEWS, EASTAUGH, JJ., and SHORTELL, J., Pro Tem.*

## OPINION

SHORTELL, Justice Pro Tem.

## I. INTRODUCTION

This is an appeal from an order of the superior court denying Frank J. Ilardi's homestead exemption claim.

The exemption claim was heard by a court master, who made findings and recommendations and concluded that Ilardi's claim of homestead exemption should be granted. Parker filed a written objection to the master's report, attaching additional evidence. The superior court considered the additional evidence, disapproved the master's report, and denied Ilardi's homestead exemption claim.

Ilardi appeals.

## II. FACTS AND PROCEEDINGS

Joyce A. Parker obtained a judgment against Frank J. Ilardi, her former husband, in the total amount of $212,291.26. In March 1993 the clerk of court issued a writ of execution on the judgment.

Notice of public sale of Ilardi's property was filed in March 1994, listing Unit No. 4B, Widgeon Court Condominiums, as the real property to be sold. A Public Notice of Levy was posted on March 30, and a Certificate of Levy recorded March 31.

Ilardi filed a claim for homestead exemption under AS 09.38.010(a). The exemption hearing was held before Master Andrew M. Brown in July 1994. Prior to the taking of evidence, counsel for Parker requested a continuance, claiming that because Ilardi failed to attend a scheduled deposition he had been unable to obtain additional evidence necessary to rebut Ilardi's argument that the Widgeon Court condominium was his principal place of residence. Parker's request for a continuance was denied. Following the hearing, Master Brown issued a master's report recommending approval of Ilardi's claim of homestead exemption on August 27, 1994. The master's report also stated:

> Any objections to this Report must be filed under Civil Rule 53 at 303 K St., Anchorage, Ak. 99501 within 10 days after its mailing. The evidence is closed, so only objections and proposed orders may be submitted, not affidavits or other documents.[1]

Prior to the conclusion of the exemption hearing, however, the parties set a date for a show-cause hearing before Judge Woodward.[2] On August 31, 1994, the show-cause hearing was held. At the hearing Parker requested additional time to respond to the master's report. The superior court gave both parties until October 7, 1994 to object to the master's report. The court also ordered Ilardi to provide a number of documents to Parker.

Parker filed an objection to the master's recommendation. She filed sixteen new exhibits with her objection. Ilardi responded, objecting that these unverified documents should not be considered because they had been submitted in violation of Master Brown's order closing the evidence.

On March 16, 1995, the superior court issued an order approving the master's findings and recommendation that Ilardi's claim

---

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

1. Master Brown reiterated the fact that the hearing and taking of evidence was closed in his order dated January 24, 1995.

2. This hearing was the result of Ilardi's failure to attend an October 1992 show-cause hearing which was scheduled after his failure to appear at a September 1992 judgment debtor exam.

of exemption be granted.[3] The court explained its decision to approve the master's report by stating "[t]he basis for [Parker's] objections consists of evidence outside of the record in this case."

In response to the March 16 order, Parker moved for reconsideration, contending that the superior court's September 21, 1994 order allowed her to supplement the record with additional evidence obtained in discovery from the appellant. Although the September 21 order had required Ilardi to produce many documents, it did not explicitly authorize Parker to submit the documents she received, nor did it reopen the evidentiary record.

The superior court then issued an order on March 31, 1995, disapproving the master's report. The order stated:

> The exemption is denied. The court meant to circle the "approved" language in the 3/16/95 order. However, the court did not then recall the prior procedural history which allowed objections to be made based on evidence obtained through discovery.
>
> . . . .
>
> Considering the evidence submitted by plaintiff with his objections, and the meaning of "actual dwelling place," the court concludes that defendant did not have an actual dwelling place at the Widgeon Court condo at the time of execution.

The superior court did not, aside from the order quoted above, issue any findings of fact or explain why it concluded the evidence required it to reject Ilardi's claim that the Widgeon Court condominium was his actual dwelling place.

Ilardi filed a motion for reconsideration, arguing that in his August 27, 1994 report Master Brown had closed the evidence and Ilardi should now have the right to present testimony to explain and rebut the new evidence submitted by Parker. The superior court denied Ilardi's motion.

This appeal followed.

## III. DISCUSSION

We must first determine whether the master and the superior court correctly interpreted the statutory terms "principal residence" and "actual dwelling place."

An individual is exempt from execution on an "interest in property in this state used as the principal residence of the individual or the dependents of the individual." AS 09.38.010(a). "Principal residence" is defined as "the actual dwelling place of an individual or dependents of the individual and includes real and personal property." AS 09.38.500(10).

In construing the homestead exemption statute, Master Brown emphasized that "the most reliable guide to the meaning of a statute is the words of the statute construed in accordance with their common usage . . . the more plain the language of the statute the more convincing the evidence of contrary legislative intent must be." *Homer Elec. Ass'n v. Towsley*, 841 P.2d 1042, 1043–44 (Alaska 1992) (citations omitted). He realized that in some cases legislative history or rules of construction might indicate that the literal meaning of a statute would not be what the legislature intended. But he also found the legislative history of the Alaska homestead exemption statute uninformative. This caused him to focus appropriately on the meaning of the phrase "actual dwelling place."

The master also recognized the requirement that exemption laws should be liberally construed in favor of the debtor. *Gutterman v. First Nat. Bank of Anchorage*, 597 P.2d 969, 972 (Alaska 1979). Emphasizing the language used by the legislature, he found that substantial absences from the debtor's property would not necessarily defeat the claim of exemption. He equated the phrase "actual dwelling place" with the term "usual place of abode." He quoted with approval a case from Missouri that said "[a]ctual residence . . . means no more than residence—true, substantial, and

---

**3.** Although in the March 16, 1995 order Judge Woodward circled the word "disapproved" in reference to the master's report, she later explained in her March 31, 1995 order granting Parker's motion for reconsideration that she meant to circle the word "approved" in her order.

real; not fictitious, nominal, or pretended." [4] His interpretation of the statute was essentially correct.

■ Alaska's exemption statute uses two phrases to describe the homestead exemption. The first is "principal residence." That term, unmodified by other statutory language, has been interpreted to require actual occupancy on a regular basis; thus, a distinction can be made between a home that is regularly occupied by the judgment debtor and property that is used only as a vacation or weekend home. *See In re Galcia's Estate*, 59 Misc.2d 511, 299 N.Y.S.2d 723, 726 (Sur. 1969) (property used only as vacation or week-end retreat does not qualify for exemption under New York exemption statute). And a marital residence vacated by a judgment debtor and no longer occupied by him because he has moved to another state cannot qualify as a "primary residence." *Fontana v. Fontana*, 89 A.D.2d 843, 453 N.Y.S.2d 23, 24 (1982).

A person may as a matter of fact have more than one residence. *Davis v. State Farm Mut. Auto Ins. Co.*, 583 So.2d 225, 228 (Ala.1991). Although the word "residence" may standing alone be "an ambiguous, elastic, or relative term," *State Farm Mut. Auto. Ins. Co. v. Hanna*, 277 Ala. 32, 166 So.2d 872, 876 (1964), the Alaskan statutory modifiers "primary" and "actual dwelling place" confirm the legislature's attempt to describe the property exempted with some degree of precision.

Under the Alaska statute, a "resident" is "an individual who is physically present in the state and who intends to maintain a permanent home in Alaska." AS 09.38.120(b).[5]

■ This definition of "resident" is comparable to the meaning given to the word "domicile." *See Unif. Exemptions Act* § 3 cmt. 4.[6] Thus, if a resident/domiciliary of this state claims a homestead exemption under Alaska law, he must prove that the property he seeks to exempt is his "actual dwelling place," or the "actual dwelling place" of his dependents.[7] "Dwelling place" is no more than the claimant's home, or the home of his dependents, which assumes a position of primary importance over any other dwelling used or occupied by the debtor or his dependents.

■ Residence in this context does not require continuous physical presence. *See Unification Church v. Attorney General for U.S.*, 581 F.2d 870, 875 n. 11 (D.C.Cir.1978). The courts have uniformly held that temporary absences from the property, even those of substantial length, will not categorically result in residency forfeiture. *See* Unif. Exemptions Act § 4 cmt. 4. *See also, Petition of Castrinakis*, 179 F.Supp. 444, 445 (D.Md. 1959). The facts and circumstances of the

---

4. *Clarkson v. MFA Mut. Ins. Co.*, 413 S.W.2d 10, 14 (Mo.1967) (quoting *United States v. Anderson*, 238 F. 648, 649 (D.Mont.1917)).

5. Alaska patterned its homestead exemption after that of the Uniform Exemptions Act, with two pertinent modifications. First, it used "primary residence" and "actual dwelling place" in place of the Uniform Act's "property in this State used as a home by [the debtor] or his dependents." Second, it defined "resident" as "an individual who is physically present in the state and who intends to maintain a permanent home in Alaska," in comparison to the Uniform Act's definition, "an individual who intends to maintain his home in this state." AS 09.38.120(b); *Unif. Exemptions Act* § 3(b), 13 U.L.A. 365 (1979).

6. Alaska's exemption statute adopts without material change the following language taken from the Uniform Act:
   Residents of this state are entitled to exemptions provided under this chapter. Nonresi-

dents are entitled to the exemptions provided by the law of the jurisdiction of their residence. AS 09.38.120(a). *See also*, Unif. Exemptions Act § 3(a). Thus, if Ilardi is a "resident" of Alaska, his exemption claim must be governed by Alaska law. If he were a resident of some other state, the law of that state would have to be invoked. No specific finding was made by either the trial court or the master whether Ilardi is a "resident" of Alaska, but the master's findings clearly indicate that he is.

7. " '[D]ependent' means an individual who derives support primarily from another individual." AS 09.38.500(3). The master declined to rule whether Ilardi's wife and her son, who were living in the condominium at the time of the levy, were "dependents" pursuant to AS 09.38.500(3) because of "insufficient evidence." This question will have to be explored on remand and the evidentiary record reopened to allow the parties to present evidence in support of their contentions.

absences should be considered in determining whether the exemption is lost. *See Fontana*, 453 N.Y.S.2d at 23–24. The facts must show that no other residence of the debtor or the debtor's dependents is used or lived in with such regularity and consistency that the claimed residence cannot be found to be the debtor's primary residence or family home.[8]

■ The exemption must be determined at the time of the levy. *Cross v. Fruehauf Trailer Co.*, 354 Mich. 455, 93 N.W.2d 233, 237 (1958). Master Brown and the superior court both correctly used this date in evaluating Ilardi's claim of exemption. They also agreed, apparently, that the facts as found by the master were correct. However, the superior court disagreed with the master's ultimate conclusion that Ilardi should be entitled to claim the Widgeon Court condominium as his principal residence. It is this disagreement that must be examined to determine whether the superior court erred in rejecting Ilardi's claim of exemption.

Master Brown found that at the time that the levy took place, March 30, 1994, Ilardi's absence from the property should be regarded as a temporary absence due to employment which should not defeat his claim to it as his "principal residence" or "actual dwelling place." He recommended that Ilardi's claim of exemption be granted.[9]

The superior court rejected the recommendation. It ruled that Ilardi did not have his "actual dwelling place" at the Widgeon Court condominium on the date of the levy. The court's conclusion was reached after consideration of the additional evidence submitted by Parker. No additional findings were made, however. Therefore, the court's reasons for rejecting the master's recommendation are not clear.

■ Ilardi argues that Alaska Rule of Civil Procedure 52(a)[10] requires the superior court's order to contain specific findings of fact and conclusions of law to permit meaningful review by this court. He is correct.

■ The trial court must accept the master's findings of fact unless they are clearly erroneous. Civil Rule 53(d)(2). The trial court may, however, disregard the master's recommendation. Its decision to do so will not be overturned unless the record shows it to have abused its discretion. *Headlough v. Headlough*, 639 P.2d 1010, 1012–14 (Alaska 1982). In this case, as in *Headlough*, we cannot determine whether the trial court abused its discretion because its ultimate conclusion is not supported by findings sufficient to give a clear understanding of the grounds upon which it reached its decision. In these circumstances, a remand

8. Analysis of the facts is necessary to avoid the allowance of dual or multiple homestead exemptions. *See* Unif. Exemptions Act § 3 cmt. 2 and 4.

9. Ilardi bought the Widgeon Court condominium in December 1989. He has owned it ever since. He lived in it from 1989 to 1993. In 1993, he took a job in Saudi Arabia and lived and worked there for nine to eleven months. The condominium was vacant for six of those months, and acquaintances of Ilardi lived in it for the rest of the time Ilardi was in Saudi Arabia. Ilardi returned to Alaska in late 1993 but he did not move back into the condominium because his acquaintances were there, and because he took four temporary jobs out of state. His wife and her son moved into the condominium in February 1994, however, and Ilardi himself moved back into the condominium in June 1994. Master Brown issued the following findings and conclusions after reviewing the facts summarized above:

At the time that the levy apparently took place—March 30, 1994—Dr. Ilardi's wife and

her son were occupying the Widgeon Court property. Three months later he joined them there. The evidence was sufficient to believe that he did not move in to that property for two reasons: (1) he was doing various temporary work assignments in the rest of the country and (2) when he was in Anchorage for brief periods this spring there was not sufficient furniture to accommodate him along with his wife and her son. His wife and her son entering into the property and staying there, with his subsequent June 1994 moving back in indicates he did not intend to abandon the property or move from it.

10. Rule 52(a) provides in part:

In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon.... Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b).

for additional findings is necessary. *Id.* at 1014.

The record is incomplete in another respect also. The court refused Ilardi the opportunity to present additional evidence after it had allowed Parker to do so. The master and the trial court consistently refused to allow supplementary evidence to be presented by either party until the March 31, 1995 order disapproving the master's report. Only fifteen days before, the trial court had told the parties that Parker's evidence was "outside" the record in this case. Under the circumstances, Ilardi, who had relied on the prior directives of the court and master, should have been allowed to respond by presenting further evidence and argument.

We therefore remand this case to the trial court to reopen the record, to hold any hearings that are needed, to take testimony if that is appropriate, and to issue findings of fact and conclusions of law in support of its decision. These further proceedings in the trial court may be conducted by the superior court or by the master, as the superior court orders.

## IV. *CONCLUSION*

This case is REMANDED to the superior court for further proceedings in light of this opinion. We retain jurisdiction of this appeal pending completion of the remand.