*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, e-mail corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| TODD SHUMWAY, | ) | |
| | ) | Supreme Court No. S-14818 |
| Appellant, | ) | |
| | ) | Superior Court No. 1JU-09-00823 CI |
| v. | ) | |
| | ) | O P I N I O N |
| BETTY BLACK LIVING TRUST, | ) | |
| DALE LOCKWOOD and | ) | No. 6882 - March 28, 2014 |
| JOAN SHUMWAY, | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Juneau, Philip M. Pallenberg, Judge.

Appearances: Todd Shumway, pro se, San Luis, Arizona, Appellant. Robert S. Spitzfaden, Gruening & Spitzfaden, APC, Juneau, for Appellee Betty Black Living Trust. Vance A. Sanders, Law Office of Vance A. Sanders, LLC, Douglas, for Appellee Dale Lockwood. No appearance by Appellee Joan Shumway.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

MAASSEN, Justice.

## I.    INTRODUCTION

This case arises from a dispute between property owners on a small island in Southeast Alaska. After moving to the island with his family, Todd Shumway

engaged in activities that Betty Black, the largest landowner, claimed were in violation of the island's protective covenants. The superior court found in favor of Black and awarded injunctive and monetary relief to her and another landowner, Dale Lockwood. When Black attempted to collect on her judgment by executing on Shumway's island property, Shumway, who was incarcerated in Arizona on charges unrelated to this case, claimed a homestead exemption. The superior court denied the exemption. Shumway appeals the denial; we affirm.

## II.  FACTS AND PROCEEDINGS

### A.  Factual Background

Colt Island is a small island near Juneau, accessible only by water and air. It was originally developed in 1975 by William Black; protective covenants were recorded in 1977, regulating activities on the island. Among other things, the covenants govern community use of the tidelands, trails, and spring; limit tree removal; and restrict waste disposal. During the times relevant here, most of the island tracts, including the portions under the common-use trails and the easements for common access, were owned by Betty Black, and the remaining lots were mostly owned by seasonal vacationers. In 2004, Todd Shumway and his then-wife Joan bought a lot with a cabin on the island's western shore.

Shumway was raised in Arizona. Shumway and his family first vacationed on the island in the summer of 2005, then returned for about a month in 2006 and again in 2007. The Shumways moved to Colt Island full-time in June 2008 and were soon in disputes with other island residents. They widened common-use trails, felled trees outside their property, damaged the island's communal spring, removed gravel from Black's property and state-owned tidelands, buried garbage and other debris on the beach, and damaged trails by their recreational use of all-terrain vehicles.

### B.    Procedural Background

Black[1] brought suit against the Shumways[2] for trespass and violation of the island's protective covenants, seeking damages and declaratory and injunctive relief. The Shumways counterclaimed against Black and brought a third-party claim against another property owner, Dale Lockwood, on grounds that both Black and Lockwood were interfering with the Shumways' rightful use of the island's easements and common areas.

The superior court granted partial summary judgment to Black and Lockwood, finding that the Shumways' activities exceeded their rights under the covenants; then, following trial in November 2010, it granted Black a permanent injunction as to the remaining issues, prohibiting the Shumways from continuing to cross her land unlawfully. The judgment also included awards of damages, attorney's fees, costs, and interest: (1) in favor of Black, for $206,973.79 against Todd Shumway and $8,987.97 against Joan Shumway; and (2) in favor of Lockwood, for $7,391.40 against the Shumways jointly and severally. The final judgment, signed and then amended in 2011, was not appealed.

Black secured a writ of execution on Shumway's Colt Island property[3] in December 2011. At the time, Shumway was incarcerated in Tucson, Arizona,

---

[1]    Betty Black died while this appeal was pending, and the Betty Black Living Trust succeeded to her interest and was substituted as a party.

[2]    Joan Shumway participated in the trial court proceeding, but she filed for divorce following the superior court's judgment on the merits. She does not participate in the appeal and is identified in the caption as an appellee pursuant to Alaska Appellate Rule 204(g).

[3]    Shumway had become sole owner of the lot following his divorce from Joan.

commencing an eight-year prison sentence for Arizona offenses; the other members of his family had returned to Arizona in 2010 following the Shumways' divorce. When Shumway received notice of the writ in January 2012, he asserted his right to a homestead exemption, contending that the island property was his primary residence and therefore exempt from execution by state law.[4] The superior court held an evidentiary hearing and, by written order dated May 29, 2012, found that Shumway was not eligible for the exemption because he was not an Alaska resident at the time of the levy.

Shumway filed this appeal pro se, stating as his only point on appeal that he was in fact a lawful resident of Colt Island and was entitled to the homestead exemption.[5] Shumway's appellate briefs, however, raise a number of other issues that were litigated and decided in the superior court but not formally appealed.

## III.   STANDARDS OF REVIEW

We review findings of fact for clear error, reversing only if we are left with a definite and firm conviction on the entire record that a mistake has been made.[6] Questions of law are subject to de novo review in which we adopt "the rule of law most persuasive in light of precedent, reason, and policy."[7]

---

[4]      *See* AS 09.38.010(a).

[5]      An order denying the homestead exemption is an appealable final order. *See Denali Fed. Credit Union v. Lange*, 924 P.2d 429, 431 (Alaska 1996) (holding that an order denying a motion for a writ of execution is tantamount to a final judgment for purposes of appeal).

[6]      *Crowley v. State, Dep't Of Health & Soc. Servs.*, 253 P.3d 1226, 1229 (Alaska 2011).

[7]      *Toliver v. Alaska State Comm'n for Human Rights*, 279 P.3d 619, 622 (Alaska 2012) (quoting *Alaskans For Efficient Gov't, Inc. v. Knowles*, 91 P.3d 273, 275 (Alaska 2004)).

## IV.   DISCUSSION

### A.   Shumway Failed To Timely Appeal, But We Relax The Rules For Purposes Of His Claim To A Homestead Exemption.

Final judgment was signed on July 1, 2011, and distributed a week later. An amended judgment was distributed on November 9, 2011.[8] Under Alaska Appellate Rule 204(a)(1), Shumway had 30 days to file a timely appeal, but he did not do so.

It was over six months later, on May 29, 2012, that the superior court denied Shumway's claim to the homestead exemption. Shumway filed a notice of appeal from this order on July 18, 2012.

We may relax the 30-day appeal deadline to avoid injustice.[9] With regard to the order denying the homestead exemption, Shumway's appeal was several weeks late. But since he not only represents himself but does so while incarcerated in another state, we afford him some procedural leeway and entertain his appeal on this issue.

Shumway's merits appeal is another matter. He filed his notice of appeal over seven months after the superior court distributed the amended judgment. The notice of appeal addressed only the order denying the homestead exemption; thus, the first notice the other parties had that Shumway intended to appeal the merits of the suit as well was when he filed his appellant's brief in June 2013, over a year and a half after any appeal from the underlying judgment was due. Shumway does not explain the serious delay. We therefore limit our consideration of his appeal to the issue of the homestead exemption.[10]

---

[8]   It appears that the amendment did nothing but correct a misidentification of Dale Lockwood in the judgment's first line.

[9]   *Richard v. Boggs*, 162 P.3d 629, 633 (Alaska 2007).

[10]   Black argues that Shumway waived this issue because he "failed to provide (continued...)

**B.** **The Court Did Not Clearly Err In Finding That Shumway Was Not An Alaska Resident For Purposes Of The Homestead Exemption.**

When Black attempted to execute on Shumway's Colt Island property, Shumway invoked the protection of AS 09.38.010, which exempts from execution "the individual's interest in property in this state used as the principal residence of the individual or the dependents of the individual," up to $72,900.[11] The exemption is limited to "homesteads," that is, real property used as the debtor's principal residence.[12] "Principal residence" is defined by statute as "the actual dwelling place of an individual."[13] The exemption is available to "[r]esidents of this state"; residents of other states "are entitled to the exemptions provided by the law of the jurisdiction of their residence."[14] A "resident" of Alaska is "an individual who is physically present in the state and who intends to maintain a permanent home in Alaska."[15] Residency is

---

[10](...continued)
legal authorities or a legal theory to support his claim." Shumway's briefing is indeed cursory, but his identification of the issue is adequate for purposes of our review. *Peterson v. Ek,* 93 P.3d 458, 464 n.9 (Alaska 2004) (holding that a pro se litigant's claims were not waived because the legal arguments were clearly discernible from the briefing despite lack of citations).

[11]    The statute lists the exemption amount as $54,000, but it is now $72,900, as set by 8 Alaska Administrative Code (AAC) 95.030 (2014), and based on the operation of AS 09.38.115.

[12]    AS 09.38.010(a).

[13]    AS 09.38.500(12).

[14]    AS 09.38.120(a).

[15]    AS 09.38.120(b).

determined as of "the time of the levy" against the property.[16] Continuous physical presence is not necessarily required, but courts should examine the facts and circumstances of any absences.[17] Conduct is weighted more heavily than declarations of intent.[18]

Black's writ of execution was issued on December 19, 2011, and served on Shumway on January 6, 2012. The superior court assumed the later date to be the date of levy for purposes of its analysis.[19] Shumway's burden was therefore to show that he was an Alaska resident on January 6, 2012, and that the Colt Island property was his principal residence.

The superior court began its review of the facts by noting that on the date of levy, Shumway "was incarcerated in Arizona," where "he will be incarcerated for the remainder of an original 8 year sentence, though he may be released early depending on programming."[20] But since "[r]esidence in this context does not require continuous physical presence,"[21] the superior court properly went on to consider other facts and

---

[16]    *Ilardi v. Parker*, 914 P.2d 888, 892 (Alaska 1996).

[17]    *Id.* at 891-92.

[18]    *Kjarstad v. State*, 703 P.2d 1167, 1171 (Alaska 1985).

[19]    The choice of dates for "the time of the levy" is immaterial in this case, as Shumway does not contend that his circumstances were any different on the two dates.

[20]    Shumway was sentenced in Arizona superior court to eight years in prison commencing August 24, 2011 (with credit for 162 days already served), to be followed by a term of "community supervision" for one year and one month. He was sentenced for violating the terms of his probation; the underlying offenses were forgery and theft committed in Arizona in 2005 and 2011.

[21]    *Ilardi*, 914 P.2d at 891 (citing *Unification Church v. Attorney General for U.S.*, 581 F.2d 870, 875 n.11 (D.C.Cir. 1978)).

circumstances relevant to Shumway's absence from the state. We have not previously addressed the effect of incarceration on residency for purposes of the homestead exemption, but other courts have. The differences among them appear to be mainly differences of emphasis. Some courts hold that once residency is established, the debtor will not lose the protection of the homestead exemption solely through involuntary incarceration.[22] Another approach is to focus primarily on the length of the prison term.[23] To other courts, incarceration is considered in the context of all other facts and circumstances; to these courts, incarceration will constitute abandonment of one's

---

[22] *See Roemelmeyer v. Godinez (In re Godinez)*, 10 B.R. 70, 71 (Bankr. S.D. Fla. 1981) ("Imprisonment, which involves a forced absence from the home, does not effect an abandonment of homestead rights."); *Roberts v. Grisham*, 493 So. 2d 940, 942 (Miss. 1986) ("Under the law as it presently stands, absence occasioned by imprisonment — even a life sentence — does not defeat the claim of homestead."); *Schaf v. Corey*, 196 N.W. 502, 503 (N.D. 1923) ("Manifestly the enforced absence of the defendant for the purpose of serving a prison sentence was no evidence of abandonment of the homestead, even on his part; and it is undisputed that the premises continued to be the home of the family during the time he was incarcerated in the penitentiary.")*; Holden v. Cribb*, 561 S.E.2d 634, 639 (S.C. App. 2002) ("We daresay [the debtor] has no intent to make the detention center his permanent residence. To hold otherwise would thwart the underlying policy of the homestead exemption."); *Driver v. Conley*, 320 S.W.3d 516, 519 (Tex. App. 2010) ("A homestead is not abandoned merely because a person does not occupy the home during a prison sentence.").

[23] *See Main v. Cnty. of Anoka*, No. C4-98-2560, 1999 WL 137841, at *1 (Minn. Tax Mar. 10, 1999) (holding that a debtor incarcerated for seven years, who "has not occupied the subject property as his homestead during that time," was not entitled to the homestead exemption); *Blaisdel v. Cnty. of Hennepin*, No. TC-12226, 1991 WL 200902, at *2 (Minn. Tax Sept. 23, 1991) (holding that a debtor incarcerated less than one year was entitled to the homestead exemption); *Dill v. Cnty. of Hennepin*, No. TC-3431 84-431, 1985 WL 3173 (Minn. Tax Mar. 6, 1985), *aff'd without opinion*, 381 N.W.2d 443 (Minn. 1986) (holding that a debtor incarcerated for nine years was not entitled to the homestead exemption).

residence only if other facts and circumstances support that conclusion.[24] This approach is consistent with our own case law.[25]

Here, in considering the facts and circumstances of Shumway's absence besides his incarceration, the superior court made note of his "long ties to the State of Arizona."[26] It noted that when he first came to Alaska, "he was on felony probation for crimes committed in Arizona"; that he had been "permitted to transfer his probation to Alaska pursuant to the Interstate Compact for Adult Offender Supervision"; and that "[h]is ability to remain in Alaska, therefore, was subject to his compliance with his terms

---

[24]     *See In Re Chase*, No. 03-11851-JMD, 2003 WL 22454876, at *2 (Bankr. D. N.H. Oct. 14, 2003) (holding that incarcerated debtor's absence was not temporary but indefinite, resulting in loss of the homestead exemption, where she lacked the financial ability to return to the home and made no "offer of proof that she had any prospect of a change in her financial condition"); *Morrisey v. Ferguson*, 753 P.2d 1192, 1194 (Ariz. App. 1988) (noting that the fact the defendant voluntarily killed the victim weighed against his claim that he was involuntarily removed from his property for incarceration); *Polk v. Polk*, A122311, 2009 WL 2613930, at *5 (Cal. App. Aug. 26, 2009) (holding that a two-year absence, followed by a prison sentence of 16 years to life, was not a temporary absence and resulted in loss of the homestead exemption); *Old Republic Nat'l Title Ins. Co. v. Kornegay*, 292 P.3d 1111, 1119 (Colo. App. 2012) (holding that incarcerated debtor who had never resided at property and stated only a "vague intention to return" was not entitled to the homestead exemption).

[25]     *See Ilardi*, 914 P.2d at 891-92 ("The facts and circumstances of the absences should be considered in determining whether the exemption is lost.").

[26]     Although the superior court did not elaborate on Shumway's ties to Arizona, there is support in the record for the finding that they were substantial. Shumway was born in Arizona and lived there for 38 years, operating several businesses there before moving to Alaska. His family's contacts with this state were limited to summer vacations until they relocated to Colt Island in June 2008; their Alaska residence then lasted only two years. In September 2010, Shumway and his wife were divorced; she and the children returned to Arizona, where they remain. Joan Shumway was granted physical and legal custody of the three minor children. Shumway's adult son is disabled and also lives in Arizona.

of supervision." Regardless of whether Shumway intended to remain in Alaska permanently, the court observed, "that intention had to be subject to the knowledge that he could only remain in Alaska while on good behavior." In fact, Shumway was ultimately "returned to Arizona because he committed a new crime in Alaska and violated his supervision."

Despite Shumway's ties to Arizona, the superior court credited his testimony that he intended to return to Alaska once he was released from prison. It noted, however, that Shumway's "ability to carry out that intention — at least for many years — is subject to events outside his control." Also accepting Shumway's argument that his absence from Alaska was "involuntary," the court found that the absence was not temporary; rather, the court found, it was Shumway's residence in the state that was temporary, ended by the behavior that violated his felony probation and prompted his incarceration in Arizona. The court concluded that despite Shumway's long-term intentions, it could not "find that he is currently — or was in January of 2012 — a resident of Alaska," and it denied the exemption.

We conclude that the superior court appropriately weighed the statutory factors relevant to a determination of Alaska residency for purposes of the homestead exemption — physical presence in the state and an intent to maintain a permanent home here[27] — and did not clearly err in finding that Shumway was not a resident of Alaska at the time of levy.

In his statement of points on appeal, Shumway asserts that the superior court erred in denying the exemption because he has resided nowhere but Alaska for the past five years, owns no other residence, and is in Arizona only temporarily and against

---

[27] AS 09.38.120(b).

his will.[28]   But he does not dispute that he is currently incarcerated in Arizona; the superior court did not clearly err in that finding. Shumway's lack of a residence elsewhere (outside of prison) does not necessarily mean that the Colt Island property is his "principal residence" or "actual dwelling place" for purposes of Alaska law, as it must be in order to qualify for the exemption.[29]   And the superior court properly considered Shumway's involuntary incarceration in the context of the other facts and circumstances of the case, including the weight that can be given to his declared intent to return to Colt Island once he is released from prison.

Shumway's opening brief, though unclear, appears to add that the superior court erroneously relied on investigations from several years earlier that determined he was a non-resident for purposes of the permanent fund dividend and hunting and fishing licenses.[30]   But the superior court made no reference to those facts in its order denying the homestead exemption, and, if it had, we cannot see how they would have benefitted Shumway's position.[31]

---

[28]   Shumway does not elaborate on these arguments in his brief; we consider them here because he is a pro se litigant.  *Toliver v. Alaska State Comm'n for Human Rights*, 279 P.3d 619, 622 (Alaska 2012) ("We consider pro se pleadings liberally in an effort to determine what legal claims have been raised.").

[29]   AS 09.38.500(12).

[30]   Shumway pleaded guilty in 2008 in Alaska to a charge of unsworn falsification based on his 2006 application for a resident sport fishing and hunting license, when he had not yet satisfied the requirements for Alaska residency.

[31]   Shumway also asks that we consider that he suffers from a mental disorder and has diminished capacity due to medications.  He did not raise this issue in the superior court in support of his claim to the homestead exemption, and he does not suggest why the result in this case should be different if we were to consider it now.

## V.     CONCLUSION

We AFFIRM the order of the superior court denying Shumway's claim to the homestead exemption.