*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| J. JILL MAXWELL, ) | |
| ) | Supreme Court No. S-16502 |
| Appellant, ) | |
| ) | Superior Court No. 3AN-13-07451 CI |
| v. ) | |
| ) | O P I N I O N |
| WILLIAM J. SOSNOWSKI, ) | |
| ) | No. 7247 – May 18, 2018 |
| Appellee. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Andrew Guidi, Judge.

Appearances: Darryl L. Thompson, Law Office of Darryl L. Thompson, P.C., Anchorage, for Appellant. Jody W. Sutherland, Sutherland Law Offices, Anchorage, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

BOLGER, Justice.

## I.      INTRODUCTION

The superior court divided the property of J. Jill Maxwell and William J. Sosnowski during divorce proceedings. The superior court found that William was entitled to credit for post-separation mortgage payments that he made on the marital residence, but it did not determine the precise amount of those credits because the sale

of the residence was pending. After the residence ultimately sold nearly two years later, the superior court issued a disbursement order that granted William credit for mortgage payments dating back to October 2011, when he moved out of the marital residence, rather than May 31, 2013, which the court had found to be the separation date. Jill appeals the effective date of the credit for these post-separation payments in the disbursement order. She also challenges consideration of the funds she provided to her adult son during the marriage in the property division order. We vacate the disbursement order because William is entitled to credit only for payments he made after the separation date. But we conclude that Jill's argument regarding the funds she gave her son is untimely because the property division order became final in December 2014.

## II. FACTS AND PROCEEDINGS

### A. Facts

J. Jill Maxwell and William J. Sosnowski married in 1992. At the time of the marriage, Jill was widowed and had one child, Anton, from her prior marriage; William was divorced and had two children from his prior marriage. Jill and William also had two children during their marriage. Since 2001, William has been employed by the Municipality of Anchorage as an electronics foreman. Jill held a variety of jobs during the marriage, among them managing the rental units owned by the couple.

During the marriage, Jill and William purchased a triplex (along with an adjacent vacant lot) in Anchorage. They lived in one of the triplex units and rented the other two units to tenants. In addition to this Anchorage property, Jill and William owned a home in Oregon, in which Anton lived. The purchase of the Oregon home was funded in part by $50,000 from Anton's savings. Jill also paid for Anton's living expenses after he reached majority, which was apparently a point of contention during the marriage. At the time of the divorce, Anton was 29 years old.

### B.     Proceedings

#### 1.     Separation and divorce trial

Jill and William permanently separated on May 31, 2013, and Jill filed a complaint for legal separation on June 4.  On June 26 William counterclaimed for divorce.  Jill and William reached an agreement on child custody and child support and filed a stipulation with the superior court, which it approved.  They also agreed on the division of their personal property, that the triplex and lot would be sold when the decree of divorce issued, and that the triplex was valued at $950,000 and the lot at $180,000.

The remaining disputed issues proceeded to a one-day divorce trial before the superior court on July 10, 2014.  Those issues included whether William should receive credit for post-separation mortgage payments made on the triplex, how Jill's financial support of Anton should affect the marital estate, and how the overall marital estate would be divided.  William requested an overall 55/45 division of the marital estate (in Jill's favor), while Jill advocated for a 70/30 division (also in her favor).  Both Jill and William testified at the trial.

On July 28, 2014, the superior court issued written findings of fact and conclusions of law regarding the estate division.  The superior court found that Jill and William permanently separated on May 31, 2013.  It determined that it was equitable to divide the estate 55/45 in favor of Jill, after it considered the equitable division factors.[1]  In making this division, the superior court considered, among the other factors, the large sum Jill had spent during the marriage on Anton's living expenses, which it found to be without William's consent.  The court found that Jill had spent $173,000 in total on

---

[1]     *See* AS 25.24.160(a)(4) (listing factors court must consider in equitably dividing the marital estate, including the parties' length of marriage, age and health, earning capacity, financial condition, conduct, and circumstances and necessities).

Anton,[2] which it determined was an unreasonable depletion of marital assets and thus factored into the share of the estate to which Jill was equitably entitled.

After making equitable division findings, the superior court turned to the proceeds from the future sale of the triplex and lot. It found that Jill "had exclusive possession of the [triplex] during the separation and has earned and retained a substantial income from the rental income of this asset," totaling over $45,000 annually. It also found that William "has been required to make the entirety of the mortgage payments" during this same time. Based on these findings, the superior court granted William "a dollar for dollar credit [for] his post separation payments" on the triplex mortgage, which would be applied to the proceeds after the triplex sold. In a handwritten notation, the court explained that this credit was warranted because "the parties physically separated (according to [Jill]) in Sept/Oct 2011 and [Jill] has lived in the . . . triplex *and* kept the income from the rental units [since the] . . . fall of 2011 to the time of trial," even though "[William] has paid the mortgage and utilities, and . . . has supported [the couple's daughter], while living in a trailer park for $600/mo." (Emphasis in original.) Because the triplex had not yet sold, the superior court did not include the precise amount of credit that William was due. The superior court issued a decree of divorce on December 29, 2014, which incorporated the findings of fact and conclusions of law "as the final order of the court."

## 2. Disbursement of triplex sale proceeds

The triplex and adjoining lot ultimately sold in April 2016. The proceeds from the sale totaled $442,260.74. However, Jill and William could not agree on how the sale proceeds should be divided; a major sticking point was the amount of credit

---

[2]     The superior court acknowledged that "[p]art of the $173,000 transfer is offset" by the parties' use of Anton's savings to fund the purchase of the Oregon home.

William was due for the mortgage payments. William sought credit for $134,041.02 in mortgage payments he made between October 2011 and April 2016. But Jill argued in a pro se motion for final disbursement of the sale proceeds that William should be granted credit only for mortgage payments made after 2013. In support of this argument, Jill asserted that William had not made the 2011 and 2012 mortgage payments using his own funds but had instead made the payments using rental income from the triplex. And she further asserted that she had been responsible for paying utilities on the triplex from 2011 through 2013.

On August 8, 2016, without holding a hearing, the superior court issued an order on the disbursement of the triplex sale proceeds. The superior court agreed with William's proposed disbursement figures and credited him $134,041.02 for mortgage payments he made from October 2011 until the time of sale. After this credit was applied and other adjustments were made, the superior court awarded Jill 55% of the remaining proceeds ($180,321.84) and William 45% ($146,082.02).

In addition, in a handwritten notation, the superior court rejected Jill's argument regarding the rental income that William allegedly received in 2011 and 2012. It deemed this argument "not material because the parties separated May 31, 2013 (as stated in the court's [property division order] and [Jill's] own trial brief)." In addition, the superior court noted that Jill's "own trial testimony . . . establish[ed] that she kept all the rental income generated by the triplex after the parties separated, while [William] paid the mortgage."

Jill moved for clarification of this order. She asked the court to clarify whether "[t]he date to begin post-separation payments" was October 2011 or the date of separation. The superior court declined to clarify its order, stating simply that the order "is clear regarding what is required of the parties" and thus "[n]o further explanation is needed." Jill then moved for reconsideration of the disbursement order. The motion

requested that the superior court hold an evidentiary hearing to "review information prior to the date of sep[a]ration of May 31, 2013." It asserted that evidence from this time period "has not yet been entered into court" because the court had previously found that May 31, 2013, was the date of separation. The superior court denied the motion for reconsideration without explanation.

Jill appeals the superior court's disbursement order. She also challenges the superior court's consideration of the funds she provided to Anton in the property division order.

## III.  DISCUSSION

Jill challenges both the superior court's disbursement order and its property division order. First, she argues that the disbursement order conflicts with the superior court's finding that she and William separated on May 31, 2013. Second, she argues that it was error for the superior court to consider the funds she spent on Anton during the marriage in its property division order. We address each argument in turn.

### A.  It Was Error To Commence William's Credit For Mortgage Payments Before The Separation Date.

Jill's first argument centers on the amount of credit owed to William for his payments on the triplex mortgage. If a spouse makes payments during separation to maintain marital property and uses post-separation income for these payments, the superior court is required to consider the payments when dividing the marital estate and to make factual findings regarding whether credit for these payments is equitable.[3] However, the superior court is not required to grant credit for these payments.[4] "Whether to award credit for post-separation mortgage payments is within the discretion

---

[3]  *Berry v. Berry*, 978 P.2d 93, 96 (Alaska 1999).

[4]  *Id.*

of the superior court in carrying out its task of creating an equitable distribution of property."[5] We accordingly review the superior court's decision to grant credit for post-separation mortgage payments for abuse of discretion.[6]

The superior court's disbursement order grants William a dollar-for-dollar credit for all payments he made on the triplex mortgage from October 2011 to April 2016, when the triplex sold, for a total of $134,041.02 in credit. But the superior court's choice of October 2011 as the date on which credit for mortgage payments should commence conflicts with the superior court's finding in the property division order that Jill and William "permanently separated on May 31, 2013." This separation date was not contested at any point in the proceedings; both Jill and William agreed that May 31, 2013, was the separation date. Moreover, our case law permits credit for payments made to maintain marital property to be granted only for payments made "*from post-separation income*."[7] William does not cite any case in which we allowed credit for payments made *before* the legal separation or used another date as the cutoff date for distinguishing marital funds from non-marital funds.

Accordingly, any mortgage payments William made before May 31, 2013, were paid from marital funds, and he is not entitled to credit for these payments. We

---

[5] *Beal v. Beal*, 209 P.3d 1012, 1023 (Alaska 2009).

[6] *Id.* at 1016.

[7] *Beals v. Beals*, 303 P.3d 453, 464 (Alaska 2013) (emphasis added); *see also Berry*, 978 P.2d at 96 ("Courts may give credit to one spouse for *post-separation* payments made to preserve marital assets . . . ." (emphasis added)); *Brotherton v. Brotherton*, 941 P.2d 1241, 1246 (Alaska 1997) (stating that superior court must consider whether spouse is entitled to "credit for the contributions he made *from separate property* in order to preserve marital property" (emphasis added)).

therefore vacate the disbursement order. On remand, the superior court should limit William's credit to the payments he made after the separation date.

**B.      Jill's Argument Regarding The Superior Court's Consideration Of The Funds She Expended On Her Son Is Untimely.**

Jill also challenges the superior court's consideration of the funds she expended on her son, Anton, in its property division order. The order considered, among other things, "the conduct of the parties, including whether there has been unreasonable depletion of marital assets."[8]  With regard to this factor, the superior court found that "during the marriage" Jill "transferred and diverted over $173,000 in marital funds to Anton for his basic living expenses." It further noted that the testimony at the divorce trial indicated that these expenditures on Anton were "an issue of contention between the parties and that [William] did not consent to these payments." Based on these findings, the superior court concluded that Jill had "unreasonably depleted marital assets throughout the marriage through these payments to her adult son." Jill argues that because her alleged economic misconduct took place during the marriage, not during the pendency of the divorce, it should not have been considered in the marital estate division.

Jill's challenge is untimely because it relates to the property division order, which became final in 2014. The property division order was incorporated in the divorce decree issued on December 30, 2014. "A property division incorporated within a divorce decree is a final judgment,"[9] and Jill failed to timely appeal it.[10]  Moreover, Jill did not

---

[8]      AS 25.24.160(a)(4)(E) (directing superior court to consider this factor in dividing marital property).

[9]      *O'Link v. O'Link*, 632 P.2d 225, 228 (Alaska 1981).

[10]      *See* Alaska R. App. P. 204(a)(1) (requiring a notice of appeal from a superior court judgment to be filed within 30 days with limited exceptions that are

(continued...)

argue that the property division order should be set aside under Alaska Civil Rule 60(b).[11] Therefore her challenge to the superior court's property division order is untimely and we do not consider it.[12]

## IV. CONCLUSION

We VACATE the disbursement order and REMAND so that the superior court may conform the order to the date of separation. We otherwise AFFIRM the superior court's judgment.

---

[10] (...continued) inapplicable here).

[11] *See O'Link*, 632 P.2d at 228 (stating that final property division order "is modifiable to the same extent as any equitable decree of the court"); *Juelfs v. Gough*, 41 P.3d 593, 597 (Alaska 2002) (noting that in order to obtain Rule 60(b)(6) relief, "a motion [must] be made by one of the parties").

[12] For this same reason, Jill's argument that, on remand, she is entitled to an evidentiary hearing on the date that William's credits should commence also fails. The superior court already conducted an evidentiary hearing (the divorce trial) and issued a property division order finding the parties separated on May 31, 2013, and determining that William was entitled to a dollar-for-dollar credit on his post-separation mortgage payments. As just noted, Jill did not appeal this final judgment and she asserts no new evidentiary basis for revisiting it. Therefore, on remand, the superior court must simply conform its disbursement order with the property division order.