NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ANDREA LEE ROSENBERG, | ) | |
| | ) | Supreme Court No. S-16968 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-13-10615 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| FRED ROSENBERG, | ) | AND JUDGMENT |
| | ) | |
| Appellee. | ) | No. 1735 – August 7, 2019 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Gregory Miller, Judge.

Appearances: Andrea Lee Rosenberg, pro se, Sacramento, California, Appellant. Jimmy E. White, Hughes White Colbo Wilcox & Tervooren, LLC, Anchorage, for Appellee.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

## I.  INTRODUCTION

After 26 years of marriage a husband sought to divorce his wife and enforce a prenuptial agreement that he had drafted prior to their wedding. The superior court concluded the agreement was valid and that the husband's business assets, worth $12 million, were separate property not included in the marital estate. The wife appeals, arguing that the court erred by enforcing the prenuptial agreement and that even if the husband's business entities had been separate, he had commingled business and personal finances in a way that rendered them marital property. The wife also challenges the

superior court's limits on her ability to secure satisfaction of the $1 million equalization payment she was awarded, as well as the interest rate on that judgment. But the wife's challenges to the prenuptial agreement and division of property are untimely, the issues related to securing the judgment are now moot, and the interest rate was proper. We therefore affirm the superior court.

## II.     FACTS AND PROCEEDINGS

### A.     Facts

Fred and Andrea Rosenberg were married on May 9, 1987. A couple months before their marriage, Fred presented Andrea with a prenuptial agreement that he had prepared. After Andrea avoided discussion of the prenuptial agreement for two months, she and Fred both signed it before a notary public three days before their wedding. The parties married as planned and were together until they separated on November 11, 2013.

### B.     Proceedings

Fred filed for divorce in November 2013, and Andrea answered in December. Their divorce trial was held over 19 days from February 19 to October 21, 2016. Fred and Andrea each testified and presented expert witnesses to discuss Fred's business entities and trace the funding for each. Twice during litigation the court ordered Fred to give Andrea a pretrial distribution of $100,000 toward her attorney's fees.

The court issued its oral decision on January 31, 2017, and required Fred to make an equalization payment to Andrea of $1 million. The court awarded Andrea a total of $1,680,000, but found that she had already received approximately $680,000. The court gave Andrea the option to either receive payment in a single lump sum, due

July 1, or in monthly payments of $7,000.[1] Andrea chose a lump sum payment. The court ordered interest to accrue on the judgment at a rate of 4.25%.

In March 2017 Fred filed a motion for reconsideration requesting that instead of paying the entire amount by July, he pay $7,000 each month up to a total of only $700,000 because the court miscalculated an asset's value. Andrea opposed this motion, but agreed to split the $1 million award into three payments: $400,000 due by July 1, 2017, the next $300,000 due by January 1, 2018, and the remaining balance due by July 2, 2018. In May 2017 the court ordered Fred to pay the $1 million according to this three-payment schedule. On June 30, however, Fred moved for relief under Alaska Civil Rule 60(b)(6). His motion claimed that his "lack of liquid resources and financial challenges" were worsened by Andrea's "premature filing of the judgment" that clouded title and prevented him from selling or refinancing property to raise the funds necessary to make the payments ordered by the court. Andrea opposed the motion, arguing that the court should not consider Fred's claims of new financial hardship and requesting that the court enforce the payment schedule in its May order.

In January 2018, following several rounds of motion practice and an evidentiary hearing, the court granted Fred relief from its May order. The court found that Fred could not afford the $400,000 payment that was due in July 2017, and determined that his inability to pay qualified as an "extraordinary circumstance" under Rule 60(b)(6).[2] The court ordered Fred to make payments of $7,000 per month until he had paid Andrea the entire $1 million. It also ordered Fred to "secure" the judgment with a promissory note and ordered Andrea to release any judgment she had recorded against

---

[1] Andrea had received a monthly "allowance" of $7,000 during the marriage.

[2] *See Williams v. Crawford*, 982 P.2d 250, 255 (Alaska 1999) (listing four factors constituting extraordinary circumstances under Civil Rule 60(b)(6)).

Fred's properties so that he could more easily finance them in order to satisfy the judgment.

Andrea filed her notice of appeal nine days later, challenging the manner in which the court ordered Fred to make the equalization payment. In June 2018 she amended her statement of issues, adding claims that the court abused its discretion by finding a valid prenuptial agreement and dividing the property, and that it applied the wrong interest rate to the judgment.

On January 30, Andrea filed a motion to stay all parts of the court's January 2018 order granting Fred relief from judgment except the part requiring him to continue paying her $7,000 installments during the appeal. Fred filed a partial non-opposition in February seeking to stay the entire order, including the $7,000 monthly payments. In April the superior court granted Andrea's motion, allowing her to execute on the full $1 million judgment and to record it rather than rely on Fred's promissory note. In May Fred filed a motion to reconsider the April order, but the court denied his motion and reiterated the requirement that he immediately make the full $1 million payment to Andrea. In ordering immediate payment the court also addressed Andrea's May 9, 2018 argument that Fred "is avoiding payment by playing 'charades' with [the] court."

## III.   STANDARD OF REVIEW

"This court applies its independent judgment to questions of law, which include mootness issues . . . and statutory construction."[3] When reviewing questions of law, we adopt "the rule of law most persuasive in light of precedent, reason, and policy."[4]

---

[3]   *In re Hospitalization of Heather R.*, 366 P.3d 530, 531-32 (Alaska 2016) (footnote omitted).

[4]   *Id.* at 532 (quoting *Nunamta Aulukestai v. State, Dep't of Nat. Res.*, 351 (continued...)

## IV. DISCUSSION

### A. Andrea's Appeal Challenging The Prenuptial Agreement And Property Division Were Untimely.

Andrea argues that she was under duress and Fred misrepresented material facts when she signed the prenuptial agreement, rendering the agreement invalid. Andrea also argues that the superior court divided the marital property inequitably when it awarded her $1 million. She claims that the court erred by categorizing most of Fred's property as separate from the marital estate. But we do not reach the merits of these claims because they were not timely filed.

An appeal "from a final judgment entered by the superior court"[5] must "be filed within 30 days from the date shown in the clerk's certificate of distribution on the judgment."[6] The superior court issued its original property division decision — including the ruling on the prenuptial agreement — from the bench on January 31, 2017, and entered its written decree of divorce and judgment the next day. The clerk's office distributed it the same day. To be within the 30-day window set by the rule, Andrea had to file her appeal by March 3, 2017.[7]

---

[4] (...continued)
P.3d 1041, 1052 (Alaska 2015)).

[5] Alaska R. App. P. 202(a).

[6] Alaska R. App. P. 204(a)(1); *see also Maxwell v. Sosnowski*, 420 P.3d 1227, 1232 (Alaska 2018) (finding that "property division incorporated within a divorce decree is a final judgment" and that failure to file appeal within 30 days made filing untimely (quoting *O'Link v. O'Link*, 632 P.2d 225, 228 (Alaska 1981))).

[7] Although the superior court granted Fred's motion for relief from judgment on January 17, 2018, it only discussed how the final judgment from January 2017 would be paid to Andrea, not the validity of the prenuptial agreement. And even if we use the January 2018 date, Andrea still filed the amended notice after the 30-day window.

Andrea filed her notice of appeal and statement of points on appeal on January 26, 2018, almost a year after the date in the clerk's certificate of distribution. Every point listed in her notice challenged the manner in which the court ordered Fred to make the equalization payment. There was no mention of the prenuptial agreement. Andrea did not appeal the agreement's validity until she filed her Motion to Amend Points on Appeal on June 5, 2018, more than 16 months after the superior court entered its judgment upholding the prenuptial agreement's validity. Even if Andrea had challenged the agreement's validity in her original notice of appeal in January 2018, it would have been well beyond the 30-day deadline, and we will not consider it.[8]

Like the validity of the prenuptial agreement, Andrea did not raise the property division issue until June 5, 2018, over 16 months after the court entered its final judgment awarding her $1 million. Because Andrea did not appeal the court's property division within 30 days, her appeal of that issue is untimely and we will not consider it.[9]

**B.      Whether It Was Error To Grant Fred Relief From Judgment Based On "Extraordinary Circumstances" Is Moot.**

Andrea argues that the superior court erred in January 2018 when it found that Fred could not pay the $1 million award in a single lump sum and granted his motion for relief from judgment. But the superior court reversed this decision in April. And in July the superior court denied Fred's motion for reconsideration of the April order and reiterated that Fred was required to immediately pay Andrea the full $1 million. Because the superior court reversed its order allowing Fred to pay the $1 million award in

---

[8]      *See Shumway v. Betty Black Living Trust*, 321 P.3d 372, 375-76 (Alaska 2014) (declining to consider appeal filed seven months after amended judgment and over eighteen months after appeal from underlying judgment was due).

[9]      Alaska R. App. P. 204(a)(1); *see Maxwell*, 420 P.3d at 1232*; Shumway*, 321 P.3d at 375-76.

monthly installments, this issue is now moot and we will not address it.[10]

**C.    Whether The Superior Court Erred By Ordering Security In The Form Of Promissory Notes Is Moot.**

Andrea argues that the superior court abused its discretion when it required her to "secure" the judgment from Fred only through promissory notes and did not allow her to record the judgment against him. Like the order granting Fred relief from judgment and the requirement that he make a single payment to Andrea, this issue is now moot because the superior court reversed its decision. In April 2018 the court ordered that "[t]o the extent [the superior] court has discretion to order that a judgment *not* be recorded, th[e] court declines to exercise its discretion that way." (Emphasis in original.) At the same time, the superior court reconsidered and reversed its previous order requiring Andrea to rely upon Fred's promissory notes to secure her judgment against him, concluding that its prior order had been "illogical." Because the court allowed Andrea to record and execute on the full judgment, we will not address this claim.[11]

**D.    The Superior Court Did Not Err By Setting The Interest Rate On The Judgment At 4.25%.**

Andrea argues that Fred's delay in making the equalization payment to her converts the judgment to a loan and that the interest should consequently be 10.5% rather than 4.25%. Andrea cites AS 45.45.010(a) from the statutory Chapter on Trade Practices, which states that "[t]he rate of interest in the state is 10.5 percent a year." Fred

---

[10]    *See Fairbanks Fire Fighters Ass'n, Local 1324 v. City of Fairbanks*, 48 P.3d 1165, 1167 (Alaska 2002) (" '[W]e will refrain from deciding questions where events have rendered the legal issue moot.' A claim is moot if it is no longer a present, live controversy, and the party bringing the action would not be entitled to relief, even if it prevails."(footnote omitted) (quoting *Gerstein v. Axtell*, 960 P.2d 599, 601 (Alaska 1998))).

[11]    *Id.*

responds that AS 09.30.070, from the statutory Chapter on Judgments, establishes the interest rate on judgments and that the superior court correctly relied on it to set the interest rate at 4.25%.

"Although a trial court has discretion whether to award interest on a judgment in a divorce proceeding, when interest is awarded it must be 'to the same extent interest on judgments generally is allowed by statute.' "[12] "The interest rate for court judgments is set out in AS 09.30.070," whereas AS 45.45.010 "applies to interest rates in trade practices."[13]

Once the superior court exercised its discretion and determined that post-judgment interest was appropriate, it correctly applied AS 09.30.070 to set the interest rate. The statute establishes "the rate of interest on judgments and decrees for the payment of money, including prejudgment interest, [as] three percentage points above the 12th Federal Reserve District discount rate in effect on January 2 of the year in which the judgment or decree is entered."[14] The superior court entered judgment in January 2017 and the discount rate in effect at that time was 1.25%.[15] Three percentage points above that is 4.25%, the rate that the superior court ordered. The superior court therefore did not err by ordering an interest rate of 4.25% on the judgment.

---

[12] *McDaniel v. McDaniel*, 829 P.2d 303, 309 (Alaska 1992) (quoting *Dixon v. Dixon*, 747 P.2d 1169, 1171 (Alaska 1987)).

[13] *Id.* at 309 n.6.

[14] AS 09.30.070(a).

[15] *Discount Rate*, FED. RESERVE BANK OF S.F., https://www.frbsf.org/banking/discount-window/discount-rate/#2016 (last visited July 18, 2019).

## V. CONCLUSION

Because the prenuptial agreement and property division issues are untimely, and the earlier form of relief granted and security ordered issues are moot, we do not consider them. And because the superior court applied the appropriate statute, we AFFIRM the superior court's order setting the post-judgment interest rate.